# COUNCIL ON PROBATE JUDICIAL CONDUCT
## RE: JAMES H. KINSELLA
### (12123)

SPEZIALE, C. J., PETERS, GRILLO, COVELLO and F. HENNESSY, Js.

Argued February 29—decision released May 15, 1984

*Edward F. Hennessey,* with whom, on the brief, were *David T. Ryan, Sally S. King* and *Kathleen C. Stone,* for the appellant (James H. Kinsella).

*Roger J. Frechette,* for the appellee (Council on Probate Judicial Conduct).

PETERS, J. This case is an appeal from the recommendation of the Council on Probate Judicial Conduct (council) publicly to censure the Honorable James H. Kinsella, the elected Judge of Probate for the District of Hartford. Proceedings before the council were initiated by a complaint from Probate Judge Ralph D. Lukens to Probate Judge Glenn E. Knierim, the probate court administrator, relating to Judge Kinsella's management of the estate of Ethel Frances Donaghue, incapable (hereinafter the estate). In response to Judge Knierim's referral of Judge Lukens' complaint, the council undertook an investigation pursuant to General Statutes § 45-11e,[1] and then notified Judge Kinsella

---

[1] General Statutes § 45-11e provided, at the time of these proceedings: "(a) The council on probate judicial conduct shall investigate any complaint involving a judge of probate, on the written request of the chief justice, chief court administrator, probate court administrator or president-judge of the Connecticut probate assembly.

"(b) The council may, on its own motion, investigate conduct of judges of probate which may violate any law or canon of ethics applicable to judges

that it would, in accordance with General Statutes § 45-11f,[2] conduct a hearing to determine whether his management of the estate had violated designated canons of the Code of Probate Judicial Conduct. A hearing was held at which Judge Kinsella, represented by his attorney, participated. The council subsequently recommended that Judge Kinsella, because of his violation of the canons of ethics, should be publicly censured in accordance with General Statutes § 45-11g (a).[3] Judge Kinsella thereupon took a timely appeal to this court as authorized by General Statutes § 45-11g (c).[4]

---

of probate, or failure to perform properly the duties of the office, or the wilful failure to file a financial statement or the filing of a fraudulent financial statement required under section 45-11j. In making any such investigation the council may use the services of the division of state police within the department of public safety, or any chief inspector, inspector or investigator in the division of criminal justice, or may engage the services of private investigators if it deems such services necessary.

"(c) If the complaint filed involves the judge of probate who is a member of the council, the judge shall be disqualified from acting in his capacity as a council member in the investigation and hearing on the matter and a judge of probate shall be appointed to act in his stead by the president-judge of the Connecticut probate assembly.

"(d) The council may engage the services of legal counsel who shall direct any investigation ordered by the council. Such counsel may conduct the examination of witnesses at any hearing held under section 45-11f, present any evidence deemed relevant, cross-examine witnesses presented by any person and perform such other duties as the council deems necessary for the conduct of its business."

[2] General Statutes § 45-11f provided, at the time of these proceedings: "The council may, after the investigation provided under section 45-11e, hold a hearing concerning the complaint. Hearings shall not be public unless requested by the judge of probate under investigation. The records of the council shall not be public records for the purposes of sections 1-19 and 1-20, except as provided in subsection (f) of section 45-11g. Any judge of probate who is under investigation and who appears before the hearing shall be entitled to counsel and shall have the right to cross-examine witnesses."

[3] General Statutes § 45-11g (a) provided, at the time of these proceedings: "(a) The council shall, after the hearing provided under section 45-11f, prepare a report of its investigation and a recommendation as to whether the judge of probate investigated should be publicly reprimanded, publicly censured or exonerated of the allegations of the complaint."

[4] General Statutes § 45-11g (c) provided, at the time of these proceedings: "(c) If public censure is recommended, the chairman shall prepare and

Much of the underlying history of this case is essentially undisputed. The estate in question is that of Ethel Frances Donaghue, who was, in 1978, an elderly woman who owned a very large amount of property. Herself an attorney, she was accustomed to managing her own life and to designating her own caretakers. She had, for a number of years, relied upon the domestic services of Mr. and Mrs. Salvatore Lucca. She had selected Attorney William W. Graulty to supervise her financial affairs and to draft her estate plans. Although she had broken her elbow in the spring of 1978, she was then legally competent.

In the fall of 1978, Judge Kinsella called Graulty to inquire about Donaghue's well-being. At a conference held on September 14, 1978, Graulty assured Judge Kinsella about Donaghue's competence to manage her affairs. At Judge Kinsella's request, Graulty submitted to Judge Kinsella a letter from Donaghue's private physician attesting to her satisfactory health. In December of that year, Donaghue's health deteriorated and Graulty then advised Judge Kinsella that a conservatorship might be needed.

In early January, 1979, Judge Kinsella appointed Attorney Alexander A. Goldfarb, a friend of long stand-

---

forward the censure in writing to the judge of probate being censured. A judge may, within twenty days after receiving notice of public censure by the council, appeal to the supreme court of Connecticut. A judge filing an appeal shall give notice of its filing to the council before the expiration of time for the filing of an appeal. The council shall, within two weeks following receipt of notice of an appeal, file a finding of fact and conclusions therefrom. The pendency of an appeal shall stay the publication of notice of the censure appealed from and all facts relating to it. The supreme court may, upon application after hearing with notice to the council and appellant, make orders, including publication of the fact of censure and all matters relating to the censure, in whole or in part, which will best serve the public interest pending final decision on the appeal. If no appeal is taken by the judge or upon determination of the appeal at the direction of the supreme court, a copy of the censure shall be furnished to the chief justice, the chief court administrator, the probate court administrator, the president-judge of the Connecticut probate assembly, the town clerk or clerks in each town in the district served by such judge of probate and the complainant."

ing, to act as guardian ad litem to inquire into the desirability of a conservatorship. On January 15, the estate of Ethel F. Donaghue, incapable, was opened in the Hartford Probate Court by Judge Kinsella. Graulty and Goldfarb were designated to be co-conservators of the estate and of the person. Attorney Paul J. Aparo, a former law clerk in the Hartford Probate Court, was appointed as the new guardian ad litem. Thereafter Graulty and Goldfarb undertook to report to the court about the assets of the estate.

Without prior notice that his conduct of the estate was being questioned, Graulty was informed at a conference with Judge Kinsella on May 4, 1979, that the court had received an application from Aparo that Graulty be removed as co-conservator of the estate. Aparo alleged that Mr. and Mrs. Lucca were mismanaging the Donaghue household and that Graulty had sanctioned their misconduct. Despite Graulty's denial of these allegations, Judge Kinsella ordered that Mr. and Mrs. Lucca be discharged immediately and that the locks on the Donaghue premises be changed on that very day. The May 4 conference was attended by Graulty, Aparo and Judge Kinsella; Goldfarb did not attend.

Judge Kinsella held a hearing on May 18, 1979, to act on the application for Graulty's removal as co-conservator of the estate. Prior to the date of the hearing, Graulty had filed an application seeking the removal of Goldfarb and Aparo. At the hearing, Aparo was permitted to amend his application to request Graulty's removal not only as co-conservator of the estate but also as co-conservator of the person. Judge Kinsella refused, however, to consider a motion for his own disqualification presented at the hearing by counsel for Graulty, and took no action on Graulty's earlier-filed motion for the removal of Goldfarb and Aparo.

Goldfarb did not attend the May 18 hearing, although he had received notice of Aparo's application and of the hearing itself.

The evidence presented at the hearing was not sufficient to make out a prima facie case that Graulty should be removed. Nonetheless, after a conference of Judge Kinsella with all of those present and their attorneys, Graulty determined on May 21, 1979, that he would resign as co-conservator of the person, although he remained as co-conservator of the estate.

After these events, Judge Kinsella continued, until March, 1981, to play an active role in the Donaghue estate. He himself hired Professor Lester Snyder, then at the University of Connecticut School of Law, to review the estate plan that Graulty had drafted for Donaghue. He met privately with Donaghue in his chambers. After a contested hearing concerning the disposition of certain documents, at which the papers were publicly ordered to be returned to Donaghue, he then, without further hearing, privately ordered their delivery to Goldfarb.

On March 9, 1981, after increasing public criticism of the management of the Donaghue estate, Judge Kinsella requested his removal as a judge in the estate. The Honorable Ralph D. Lukens was appointed in his stead and, at Judge Kinsella's official request, held hearings concerning the estate in accordance with General Statutes § 45-262.[5] Judge Lukens, after receiving

[5] General Statutes § 45-262 provides as follows:

"Sec. 45-262. EXAMINATION OF WITNESSES. (a) Any court of probate may, upon written application of the fiduciary having in his control any estate before such court or of any person having an interest in such estate, summon any person to appear and give testimony under oath on matters relating to such estate. The attendance of any person who has been served with any subpoena may be secured by a capias.

"(b) A person shall not be excused from answering any question on the ground that his answer will tend to convict him of fraud, but his answer shall not be used as evidence against him in any criminal prosecution except for perjury."

extensive testimony, filed a memorandum of decision on September 24, 1981, in which he removed Graulty and Goldfarb from further responsibility for the estate. Aparo subsequently resigned. A few days later, on October 5, 1981, Judge Lukens filed with the Honorable Glenn E. Knierim, the probate court administrator, a complaint critical of the actions of Judge Kinsella. Thereupon, Judge Knierim transmitted the Lukens complaint to the Council on Probate Judicial Conduct, which issued its own complaint against Judge Kinsella in the proceedings currently before us.

In the proceedings before the council, the council took judicial notice of the Lukens file. It was furthermore agreed that the entire file of the estate was to be an exhibit. The council heard testimony from various witnesses, including Judge Kinsella, who was represented by counsel throughout the proceedings.

The Council on Probate Judicial Conduct was critical of Judge Kinsella's role in regard to many of these events. It is useful to relate these criticisms, as did the council, to various time periods: (1) the period before the establishment of the estate in the fall of 1978; (2) the period when the estate was first managed under the aegis of the Hartford Probate Court, in the early part of 1979; and (3) the period of controversy surrounding Graulty's conservatorship in May, 1979. In addition, the council criticized ex parte actions by Judge Kinsella throughout his superintendance of the Donaghue estate.

The council concluded that Judge Kinsella had wrongfully intervened in the affairs of Donaghue in the fall of 1978. The council determined that there was, in the early fall, no need for judicial intervention, and that Judge Kinsella had misrepresented to Graulty, in December, 1978, that Graulty would be appointed as

sole conservator, when the need for a conservatorship arose. This conduct, according to the council, violated Canon 1 of the Code of Probate Judicial Conduct.[6]

The council concluded that Judge Kinsella had acted wrongfully in the appointments of Goldfarb and Aparo when the estate of Ethel Donaghue, incapable, was opened in the Probate Court on January 15, 1979. The council found that these appointments were motivated by favoritism and not by merit, and that they represented the exercise of bias and prejudice against Graulty. This conduct, according to the council, violated Canons 2, 2.1, 2.2, 3.1.01, 3.2.04 and 3.3.01. a.[7]

---

[6] Canon 1 of the Code of Probate Judicial Conduct provides:

"CANON 1. *A Judge Should Uphold the Integrity and Independence of the Judiciary.*

"An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing, and should himself observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved. The provisions of this Code should be construed and applied to further that objective."

[7] The Code of Probate Judicial Conduct provides in part:

"CANON 2. *A Judge Should Avoid Impropriety and the Appearance of Impropriety in All His Activities.*

"2.1. A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

"2.2. A judge should not allow his family, social, or other relationships to influence his judicial conduct or judgment. He should not lend the prestige of his office to advance the private interests of others; nor should he convey or permit others to convey the impression that they are in a special position to influence him. He should not testify voluntarily as a character witness.

"CANON 3. *A Judge Should Perform the Duties of His Office Impartially and Diligently.*

"The judicial duties of a judge take precedence over all his other activities. His judicial duties include all the duties of his office prescribed by law. In the performance of these duties, the following standards apply:

"3.1. Adjudicative Responsibilities.

".01. A judge should be faithful to the law and maintain professional competence in it. He should be unswayed by partisan interests, public clamor, or fear of criticism. . . .

"3.2. Administrative Responsibilities . . .

".04. A judge should not make unnecessary appointments. He should

The council concluded that Judge Kinsella had acted wrongfully in his response to Aparo's May, 1979 application for the removal of Graulty from the estate. The council found that Judge Kinsella should have disqualified himself, as he had otherwise regularly done in contested matters involving Goldfarb. Furthermore, in the meeting of May 4, 1979, Judge Kinsella's conduct was criticized for failing to give Graulty adequate notice of the misdeeds of which Graulty was accused, for threatening Graulty, and for discharging the Luccas in disregard of the interests of Donaghue. The subsequent hearing, on May 18, 1979, was found to have been conducted in an impatient, undignified and discourteous manner which exhibited a lack of integrity and impartiality. These various acts of misconduct, according to the council, violated Canons 1, 2.1, 2.2, 3.1.01, 3.1.03, 3.1.04, 3.3.01. a, 3.3.01. d, and 3.1.05.[8]

---

exercise his power of appointment only on the basis of merit. He should not approve compensation of appointees beyond the fair value of services rendered. . . .

"3.3. Disqualification.

".01. A judge should disqualify himself in a proceeding pending in his own court in which his impartiality might reasonably be questioned, including but not limited to instances where:

"a. he has a personal bias or prejudice concerning a party in interest."

[8] Canon 3 of the Code of Probate Judicial Conduct provides in part:

"3.1. Adjudicative Responsibilities . . .

".03. A judge should be patient, dignified, and courteous to litigants, witnesses, lawyers, and others with whom he deals in his official capacity, and should require similar conduct of lawyers, and of his staff, court officials, and others subject to his direction and control.

".04. A judge should accord to every person who is legally interested in a proceeding, or his lawyer, full right to be heard according to law, and, except as authorized by law, or except as may be necessary to carry out the administrative duties of the court, neither initiate nor consider ex parte or other communications concerning a pending or impending proceeding. A judge, however, may obtain such advice as is necessary on any matter pending before his court.

".05. A judge should dispose promptly of the business of the court. He shall use his good offices to promulgate the expeditious settlement of all matters pending before him. . . .

"3.3. Disqualification.

".01. A judge should disqualify himself in a proceeding pending in his

The council concluded that Judge Kinsella had acted wrongfully throughout the time that the estate was under his supervision, by engaging in ex parte communications concerning the estate. These communications, the council found, included conversations with his ward and with other persons including Goldfarb, Aparo and Snyder. These ex parte communications, the council found, influenced Judge Kinsella's judicial conduct in repeated rulings in favor of Goldfarb and Aparo and against Graulty. As a result, the council concluded that Judge Kinsella had violated Canons 1, 2.1, 2.2, 3.1.01, 3.1.04 and 3.3.01. a.[9]

Throughout its detailed findings of fact and conclusions of law, the council emphasized its central determination that the relationship between Judge Kinsella and Goldfarb had a deleterious impact upon the decision-making by the judge with respect to the Donaghue estate. Specifically, in its final three conclusions, the council reiterated that "Kinsella, J. acted in concert with Goldfarb, and to a considerably lesser extent with Aparo, to help them to gain financial control over the Estate. . . . Kinsella, J.'s failure to disqualify himself, his ex parte actions and his handling of some parts and not others . . . were caused by his bias and prejudice

own court in which his impartiality might reasonably be questioned, including but not limited to instances where: . . .

"d. to act in connection with such proceeding would give the appearance of impropriety when there is so near a relationship to him of a person who:

"i. is a party in interest to the proceeding, or an officer, director, or trustee of a party in interest;

"ii. has a financial or other interest in the subject matter in controversy that could be substantially affected by the outcome of the proceeding;

"iii. is acting as a lawyer in the proceeding;

"iv. is to the judge's knowledge likely to be a material witness in the proceeding."

See footnotes 6 and 7, supra, for the text of Canons 1, 2.1, 2.2, 3.1.01 and 3.3.01. a.

[9] See footnotes 6, 7 and 8, supra, for the text of Canons 1, 2.1, 2.2, 3.1.01, 3.1.04 and 3.3.01. a.

in favor of Goldfarb and Aparo and against Graulty.
. . . Kinsella, J. [acted and ruled] in favor of and to
the financial benefit of his friends Goldfarb and Aparo
to the detriment of Graulty."

Because of the wrongful handling of the estate of
Ethel Donaghue in all of these particulars, the council
recommended that a sanction of public censure should
be imposed upon Judge Kinsella for his violation of the
Canons of Ethics of the Code of Probate Judicial Con-
duct. In his appeal, Judge Kinsella urges us to reject
the council's decision because: (1) the council's disputed
findings of fact and conclusions of law were not sup-
ported by clear and convincing evidence; (2) the coun-
cil's action resulted from erroneous procedural rulings;
(3) the council's action resulted from erroneous eviden-
tiary rulings; (4) the council violated the appellant's
statutory right to confidentiality; and (5) the council's
proceedings were unconstitutional. We conclude that
these claims are without merit.

I

Before we can determine whether the Council on Pro-
bate Judicial Conduct erred in its findings of fact or
its conclusions of law, we must first determine the pro-
cedural framework within which we operate. This is
a case of first impression. We have not previously con-
sidered either the standard of proof that governs judi-
cial conduct proceedings, or the standard of review that
governs appeals from recommendations of public cen-
sure.

In its appraisal of the evidence against Judge Kinsella,
the council expressly concluded that "[t]he facts were
found by clear and convincing proof." Although the
statutes concerning probate judicial conduct fail to pre-
scribe a standard of proof, we agree with the council's
determination that judicial disciplinary proceedings
require more than proof by a preponderance of the evi-

dence. The vast majority of courts in other jurisdictions have similarly concluded that the proper standard is clear and convincing proof. *In re Hanson,* 532 P.2d 303, 307–308 (Alaska 1975); *McComb* v. *Commission on Judicial Performance,* 19 Cal. 3d Spec. Trib. Sup. 1, 11, 564 P.2d 1, 138 Cal. Rptr. 459 (1977); *In re Crowell,* 379 So. 2d 107, 109 (Fla. 1979); *In re Rome,* 218 Kan. 198, 206, 542 P.2d 676 (1975); *Nicholson* v. *Judicial Retirement & Removal Commission,* 573 S.W.2d 642, 644 (Ky. 1978); *In re Daniels,* 340 So. 2d 301, 306–307 (La. 1976); *In re Diener & Broccolino,* 268 Md. 659, 670, 304 A.2d 587 (1973), cert. denied, 415 U.S. 989, 94 S. Ct. 1586, 39 L. Ed. 2d 885 (1974); *In the Matter of Troy,* 364 Mass. 15, 72, 306 N.E.2d 203 (1973); *In re Gillard,* 271 N.W.2d 785, 805 n.3 (Minn. 1978); *In re Martin,* 67 N.M. 276, 281, 354 P.2d 995 (1960); *In re Nowell,* 293 N.C. 235, 247, 237 S.E.2d 246 (1977); *In the Matter of Field,* 281 Or. 623, 629, 576 P.2d 348 (1978); *Matter of Dalessandro,* 483 Pa. 431, 437, 397 A.2d 743 (1979); *In re Friday,* 263 S.C. 156, 159, 208 S.E.2d 535 (1974); *Matter of Heuermann,* 90 S.D. 312, 317, 240 N.W.2d 603 (1976); *Matter of Johnson,* 568 P.2d 855, 865–66 (Wyo. 1977); contra *In re Terry,* 262 Ind. 667, 670–71 n.2, 323 N.E.2d 192, cert. denied, 423 U.S. 867, 96 S. Ct. 129, 46 L. Ed. 2d 97 (1975) (preponderance of evidence); *Matter of Duncan,* 541 S.W.2d 564, 569 (Mo. 1976) (preponderance of evidence); *In re Brown,* 512 S.W.2d 317, 319–20 (Tex. 1974) (preponderance of evidence); *Daugherty* v. *Day,* 116 S.E.2d 131, 136 (W. Va. 1960) (preponderance of evidence); *In re Yengo,* 72 N.J. 425, 429, 371 A.2d 41 (1977) (beyond a reasonable doubt); see also ABA Standards Relating to Judicial Discipline § 7.10 (1978).

The more difficult procedural question concerns the scope of our review. In many jurisdictions, the commission that investigates judicial misconduct is authorized only to make recommendations to the state supreme

court. Consequently, the reviewing court is entitled, indeed obligated, to reach its own conclusions as to the facts found by the commission and as to the recommendation that discipline be imposed upon a judge. E.g., *In re Hanson,* supra, 308–309; *Geiler* v. *Commission on Judicial Qualifications,* 10 Cal. 3d 270, 276, 515 P.2d 1, 110 Cal. Rptr. 201 (1973); *In re Terry,* supra, 670–71 n.2; *In re Rome,* supra, 198–99; *In re Diener & Broccolino,* supra, 670, 689; *In re Nowell,* supra, 246–47; *Matter of Heuermann,* supra, 317–18; see ABA Standards Relating to Judicial Discipline § 7.8 (1978). Our statute reads differently. Under General Statutes § 45-11g, while the decision of the council to reprimand or to censure a probate judge is denominated a recommendation, the recommended reprimand or censure is final, and will become public,[10] in the absence of a timely appeal by the judge to this court. In these circumstances, our review is not de novo. We cannot assess the credibility of witnesses. See *State* v. *Vass,* 191 Conn. 604, 610, 469 A.2d 767 (1983); *State* v. *Gold,* 180 Conn. 619, 647, 431 A.2d 501, cert. denied, 449 U.S. 920, 101 S. Ct. 320, 66 L. Ed. 2d 148 (1980). Nonetheless, our review must take into account the risk that unfounded charges of judicial misconduct will impair society's interest in an independent judiciary. We must therefore depart from our normal rule of deference to factfinding by trial courts and administrative agencies. We have a nondelegable responsibility, upon an appeal, to undertake a scrupulous and searching examination of the record to ascertain whether there was substantial evidence to support the council's factual findings. See *State* v. *Harris,* 188 Conn. 574, 580, 452 A.2d 634 (1982), cert. denied, 460 U.S. 1089, 103 S. Ct. 1785, 76 L. Ed. 2d 354 (1983); *State* v. *Frazier,* 185 Conn. 211, 219, 440 A.2d 916 (1981), cert. denied, 458 U.S. 1112, 102 S. Ct. 3496, 73 L. Ed. 2d 1375 (1982).

---

[10] In 1983, General Statutes § 45-11g was amended to repeal the provision that the pendency of an appeal would stay public notice of reprimand or censure.

The findings of the probate council are attacked by Judge Kinsella on the grounds that the council erroneously: (1) shifted the burden of proof to Judge Kinsella; (2) made findings without proper evidence; (3) characterized the evidence in its findings and conclusions; and (4) relied on minutiae and irrelevancies in its findings and conclusions. We conclude that these claims have not been substantiated.

The claim that the council erroneously placed upon Judge Kinsella the burden of disproving his misconduct arises out of various findings by the council in which the council took note of lacunae or imprecision in the testimony of the judge and those who testified in his behalf. It is not necessary to detail the challenged findings because they are clearly not vulnerable on this ground. In evaluating the evidence presented by the various witnesses, the council necessarily was free to draw inferences from what they said, how they said it, and what they did not say. As long as there was positive evidence in support of the council's findings, corroboration by way of the weakness of the opposing case was not inadmissible. Judge Kinsella's reliance on *Anderson* v. *Anderson,* 191 Conn. 46, 56, 463 A.2d 578 (1983), and *Ruscito* v. *F-Dyne Electronics Co.,* 177 Conn. 149, 166, 411 A.2d 1371 (1979), is therefore inapposite.

The claim that the council's findings were unsupported by proper evidence suffers from an effort to tar these findings with too broad a brush. We cannot agree with the proposition that the sufficiency of evidentiary support for findings of fact is a matter that is arithmetically quantifiable. We reject the proposition that a finding supported by only one piece of evidence, no matter how probative, necessarily fails the test of clear and convincing evidence.

The main thrust of the attack on the findings of the council is the claim that there was insufficient evidence to support findings about the relationship between Judge Kinsella and Goldfarb and about the propriety of Judge Kinsella's determinations with respect to the Donaghue estate. Careful review of the entire record persuades us that this claim cannot succeed. The council had before it not only the evidence of the witnesses that appeared in the present proceedings, but also the record of the proceedings before Judge Lukens, of which the council took judicial notice. There was sufficient evidence to find, by clear and convincing proof, that Goldfarb had private communications with Judge Kinsella about the Donaghue estate, and that his tenure as co-conservator resulted from favoritism by Judge Kinsella rather than from an objective appraisal of the needs of the Donaghue estate. Similarly, there was substantial evidence to support the conclusion that Donaghue's condition did not warrant the remedial measures that the judge unilaterally implemented. It was not error, as is claimed, for the council, in making its determinations, to adopt the testimony of one witness and to reject the conflicting testimony of another.

Finally, the findings are attacked because they make determinations not only about what transpired but about the manner in which Judge Kinsella confronted the various parties and their attorneys. We view these adjectival characterizations as of secondary importance in light of the ample evidence of substantive misconduct. Of necessity, findings about motivation and prejudgment are difficult to substantiate. The evidence on the record does, however, provide support for these findings.

The claim that the council's factual findings, if otherwise supported, must be deemed erroneous because of their excessive detail is similarly unpersuasive. As a general proposition, findings are more vulnerable to

criticism if they are so imprecise as to evade review upon appeal than if they are so detailed that they dwell on the marginally relevant. We are not persuaded that the detailed findings of the council in this case detract from the central factual findings which have been clearly and convincingly proven.

We conclude therefore, on the basis of our own review of the voluminous record before us, that the central facts concerning Judge Kinsella's stewardship of the Donaghue estate have been established by clear and convincing proof. Judge Kinsella was shown to have damaged the integrity and the independence of the judiciary, in violation of Canon 1 of the Code of Probate Judicial Conduct, by placing his friend Goldfarb and his former associate Aparo in a position to benefit financially from the Donaghue estate and by failing to disqualify himself when his bias on their behalf was reasonably called into question. Canon 1 was further violated by Judge Kinsella's ex parte communications and actions concerning the estate, and his disregard of Donaghue's interest in her relationship with her chosen caretakers. Judge Kinsella's conduct in these respects also violated the obligation of a judge, under Canon 2, to avoid impropriety and the appearance of impropriety, and, under Canon 3, to perform the duties of his office impartially and diligently. Judge Kinsella's conduct certainly gave at least the appearance of favoritism toward Goldfarb and Aparo and bias against Graulty. Judge Kinsella's failure to disqualify himself and his ex parte actions concerning the Donaghue estate were inconsistent with the obligations of his office. Because these well-established findings are sufficient to support a recommendation of censure, we need not determine whether each of the council's other findings would independently warrant an adverse recommendation. In the totality of circumstances manifested by the entire record before us, we agree that a public censure was warranted.

## II

Judge Kinsella urges us to find that the council made numerous procedural errors which require us to set aside its recommendation of censure. He complains of the council's adverse rulings on: (1) his request for a more particular statement of the charges against him; (2) his requests for discovery; (3) his motion for dismissal of the charges on grounds of estoppel or res judicata; (4) his motion for disqualification of the council for bias or prejudice; and (5) his requests for a continuance. We conclude that these complaints have not been substantiated on the record of this case.

We agree with Judge Kinsella that his procedural rights are not circumscribed by the provisions of § 45-11f that specify only a judge's right to counsel and cross-examination. Fundamental fairness requires notice of the charges to be answered and a reasonable opportunity to respond thereto. *Fermont Division* v. *Smith,* 178 Conn. 393, 397, 423 A.2d 80 (1979); *Murphy* v. *Berlin Board of Education,* 167 Conn. 368, 374–75, 355 A.2d 265 (1974); *Hart Twin Volvo Corporation* v. *Commissioner of Motor Vehicles,* 165 Conn. 42, 44–46, 327 A.2d 588 (1973); *In re Hanson,* 532 P.2d 303, 305 (Alaska 1975); *McCartney* v. *Commission on Judicial Qualifications,* 12 Cal. 3d 512, 519–20, 526 P.2d 268, 116 Cal. Rptr. 260 (1974); *In re Inquiry Concerning a Judge (Taunton),* 357 So. 2d 172, 175–77 (Fla. 1978); *Matter of Storie,* 574 S.W.2d 369, 372–73 (Mo. 1978). The council's conduct of its proceedings in this case afforded to Judge Kinsella the procedural rights to which he was entitled.

The motion for a more specific statement claims that Judge Kinsella received inadequate notice of the charges against him. Judge Kinsella knew, from the outset, that the investigation concerned his manage-

ment of the Donaghue estate, because he himself had initiated the investigation by his letter of March 5, 1981.[11] Before the council hearing began on October 4, 1982, Judge Kinsella had received a copy of Judge Lukens' letter to Judge Knierim specifying six items of questionable conduct warranting complaint to the Council on Probate Judicial Conduct,[12] a letter from

---

[11] The letter read as follows:

"The Honorable Glenn E. Knierim
80 South Main Street
West Hartford, Connecticut, 06107

Re: *Estate of Ethel Frances Donaghue, etc., incapable*

Dear Judge Knierim:

By recent innuendos and inference, the administration of the above entitled estate has been called into question. Sec. 45-262 of the General Statutes provides a forum for inquiring into the matter and a proceeding will shortly be held in accordance with that statute.

Because of the circumstances surrounding the complexity of this matter, I have disqualified myself and hereby request that a Superior Court Judge be called to preside at the hearing. Said request is being made in accordance with Sec. 45-7 of the General Statutes.

Very truly yours,
/s/James H. Kinsella
Judge"

JHK: abc

[12] Judge Lukens recommended that the council investigate the following matters:

"1. The appointment of Attorney Goldfarb as guardian ad litem for Miss Donaghue, the acceptance of his resignation on the date of the determination of Miss Donaghue's capacity, and the immediate appointment of Attorney Goldfarb as co-conservator of both the person and the estate.

"2. The determination of a Motion for disqualification at a hearing on May 18, 1979, without allowing argument.

"3. The characterization and treatment of a proposed witness at the Hearing on May 18, 1979 and possible mistreatment of that same person at and after a meeting held by the Court on May 4, 1979.

"4. The actions taken at the Hearing on May 18, 1979, and subsequently on May 21, 1979.

"5. The involvement of the Court with respect to both the past and the future testamentary and other disposition of the property of Miss Donaghue.

"6. The Court's disqualifying itself on some matters and not on others in its overseeing of this Estate."

the council listing the violations of the Canons of Probate Judicial Conduct with which he was charged, and a further detailed letter from the council's attorney linking Judge Lukens' complaints with the canons. The attorney's letter further apprised Judge Kinsella of the names of the witnesses that would be called and the documentary evidence which would be relied upon. In their totality, these letters adequately apprised the judge of the charges against him. See *In re Gillard,* 271 N.W.2d 785, 807–808 (Minn. 1978); *Matter of Storie,* supra, 372.

The council refused to act on Judge Kinsella's motion for discovery of inculpatory or exculpatory evidence in its investigative files. Concededly, there is no statutory basis for this motion. It may well be that, in some circumstances, crucial information would be so unavailable to a judge whose conduct was under scrutiny that fundamental fairness would require timely disclosure. The present case does not call for such unusual measures. The charges against Judge Kinsella concerned his conduct, often in his own courtroom, in proceedings to which he had access as of record. The transcripts and the exhibits in the proceedings before Judge Lukens were available to him and his attorneys. Denial of this motion was not an abuse of discretion. See *McCartney* v. *Commission on Judicial Qualifications,* supra, 520; *In re Dupont,* 322 So. 2d 180, 183 (La. 1975).

Judge Kinsella's motion to dismiss on the grounds of estoppel or res judicata was based on prior investigations by the council into appointments of Attorney Goldfarb, where the council, he claimed, had concluded that there had been no impropriety or appearance of impropriety. If in fact such a prior determination had encompassed the management of the Donaghue estate, we would have to reach the question of finality of decision-making in the context of a commission's

inquiry into judicial misconduct. See *Cannon* v. *Commission on Judicial Qualifications,* 14 Cal. 3d 678, 704, 537 P.2d 898, 122 Cal. Rptr. 778 (1975); *In re Inquiry Concerning a Judge (Lee),* 336 So. 2d 1175, 1177 (Fla. 1976); *In re Kelly,* 238 So. 2d 565, 570 (Fla. 1970). The record before us, however, reveals neither the issues previously adjudicated nor the claims that might then have been raised. In these circumstances, the denial of the motion to dismiss was justified.

Judge Kinsella sought to have the council disqualify itself for bias and prejudice because of the adverse media publicity which the Donaghue estate had engendered. The only argument offered to the council when this motion was presented was an expression of concern about how the panel might feel about the case. Without further evidentiary allegations, the council was not obligated to grant the motion to disqualify.

Finally, Judge Kinsella maintains that the council should have granted his requests for continuance of the proceedings against him. Two reasons were advanced, the unavailability of his chosen attorney and the trial responsibilities of his substitute attorney. The denial of these requests must be evaluated in the context of a hearing which was scheduled on July 9, 1982, to take place on October 4, 5 and 6, 1982. In the light of this significant advance notice, the denial of a continuance cannot be considered an abuse of the council's discretion. *State* v. *Wallace,* 181 Conn. 237, 240, 435 A.2d 20 (1980); *State* v. *Jeustiniano,* 172 Conn. 275, 284–85, 374 A.2d 209 (1977); *State* v. *Manning,* 162 Conn. 112, 121, 291 A.2d 750 (1971).

In sum, we find no error in the council's disposition of the various procedural motions that we have been asked to review. The council's conduct was consistent with the requirements of procedural due process, which, in the absence of more stringent statutory mandates, must govern its proceedings.

## III

Judge Kinsella claims that the council made numerous erroneous evidentiary rulings. He complains about (1) the admission of hearsay opinions from Judge Knierim; (2) the admission of the Lukens report; (3) the refusal to permit relevant testimony from Judge Kinsella; and (4) the allowance of improper cross-examination of Judge Kinsella. We disagree with these evidentiary complaints.

Judge Knierim was permitted, over objection, to testify about his receipt of unfavorable comments about the Donaghue estate. In his capacity as probate court administrator, Judge Knierim had an interest in the existence of such derogatory comments, regardless of their truth. It was for this limited purpose that his testimony was offered and received. Viewed either as testimony admissible as a verbal act; *Gyro Brass Mfg. Corporation* v. *United Automobile Workers,* 147 Conn. 76, 80, 157 A.2d 241 (1959); *State* v. *Tolisano,* 136 Conn. 210, 214–15, 70 A.2d 118 (1949); or as testimony admissible for its effect as a communication upon its hearer; *State* v. *Zdanis,* 173 Conn. 189, 192 n.1, 377 A.2d 275 (1977); the testimony did not constitute hearsay.

The Lukens report was received by the council when, with the consent of Judge Kinsella's attorney, it took judicial notice of the Lukens file and received as an exhibit the entire file covering the Donaghue estate. Objections about the admissibility of any of these documents cannot survive these evidentiary concessions.

The council did not abuse its discretion in its rulings concerning the examination and cross-examination of Judge Kinsella. The council excluded some exculpatory evidence about the May 4 hearing because it purported to provide detail concerning that event which Judge

Kinsella had previously indicated that he could not recollect. The council refused to allow Judge Kinsella to testify about the discharge of the Luccas partly because of the form of the question and partly because of prior exclusion, at Judge Kinsella's behest, of a similar line of inquiry with other witnesses. The council permitted Judge Kinsella to be asked, with obvious relevance to a charge of an appearance of impropriety, whether the public would be able to know why he had sought Graulty's removal. Over objection, Judge Kinsella admitted that there was no way to know "if you wanted to do a favor for Mr. Goldfarb or in fact Mr. Graulty should have been removed, isn't that so?" That question, the only instance of allegedly partisan cross-examination which has been brought before us, does not exceed the bounds of propriety. See *State* v. *Moye*, 177 Conn. 487, 506–507, 418 A.2d 870, vacated and remanded on other grounds, 444 U.S. 893, 100 S. Ct. 199, 62 L. Ed. 2d 129 (1979); *Akers* v. *Singer*, 158 Conn. 29, 36, 255 A.2d 858 (1969).

The issue, in our review of these evidentiary questions, is not whether, in each instance, this court would have made the same rulings as did the council. Like a court of law or an administrative tribunal, the council had considerable latitude to determine, in its discretion, what evidence to permit or to exclude. *State* v. *Vass*, 191 Conn. 604, 621, 469 A.2d 767 (1983). We conclude, upon examination of the record, that Judge Kinsella has established no abuse of discretion in the council's evidentiary rulings.

## IV

Judge Kinsella charges the council with impairment of his statutory right of confidentiality. Under § 45-11f, hearings of the council "shall not be public unless requested by the judge of probate under investigation." Further, § 45-11g provides that the pendency of an

appeal from a recommendation of public censure "shall stay the publication of notice of the censure appealed from and all facts relating to it." Judge Kinsella has, at all times, in accordance with these statutory provisions, sought to protect his right to have these proceedings remain confidential. He claims that the council violated these rights in that: (1) complaints and hearing dates were repeatedly publicized and sensationalized; (2) John McNerney, an investigator for the council's attorney, was present at the hearings; and (3) there was an unauthorized disclosure of the recommendation of censure to a local newspaper. Although we agree that Judge Kinsella had a statutorily protected right of confidentiality at the time of these proceedings, we conclude that he has not demonstrated that the council violated that right.

It is undeniable that the management of the Donaghue estate was the subject of extensive media coverage, much of it unfavorable. That fact was an acknowledged reason for Judge Kinsella's decision to remove himself from the estate on March 9, 1981, and his virtually simultaneous request for an impartial inquiry into his stewardship. Judge Kinsella, by letter of October 21, 1981, urged the Council on Probate Judicial Conduct to investigate how proceedings before Judge Lukens had come to be publicly reported. The council properly denied this request, on November 12, 1981, since its power of investigation is limited, by statute, to the conduct of a judge of probate. We know of no authority, and none has been cited to us, which would entirely preclude an orderly investigation of judicial misconduct on the ground of prior adverse public comment. If fairly conducted to avoid prejudice in the hearing itself, the adjudicatory process may go forward. *Dobbert* v. *Florida,* 432 U.S. 282, 303, 97 S. Ct. 2290, 53 L. Ed. 2d 344, reh. denied, 434 U.S. 882, 98 S. Ct. 246, 54 L. Ed. 2d 166 (1977); *Murphy* v. *Florida,* 421

U.S. 794, 799, 95 S. Ct. 2031, 44 L. Ed. 2d 589 (1975); *State* v. *Piskorski,* 177 Conn. 677, 688–89, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979).

On the record before us, Judge Kinsella has failed to substantiate his claim that the council itself acted in a manner that was prejudiced or contributed to adverse comment against him. There is no evidence that the council improperly "publicized and sensationalized" the complaint that had been received or the hearing dates that had been set. Judge Kinsella has not alleged, nor does the record show, that he was actually prejudiced by the presence of the investigator who was assisting the council's attorney. The council, under § 45-11e, had direct statutory authority to engage an attorney to "conduct the examination of witnesses . . . present any evidence deemed relevant, cross-examine witnesses . . . and perform such other duties as the council deems necessary for the conduct of its business." It is implicit in this grant of statutory authority that the attorney designated by the council may, with the permission of the council, utilize the services of an associate or an investigator.

Finally, the council did not improperly release information about its decision to the media. At the conclusion of the hearing, the council discussed the likely media interest in the outcome of the proceedings with Judge Kinsella's attorney. At that time, the attorney indicated: "I trust your discretion and I understand, I understand . . . your desire to have some response [to media inquiries]." In the following spring, a local newspaper carried a story in which a reporter inferred that the council had decided to discipline Judge Kinsella, "because the decision has not been made public

yet." The bare announcement that the council had reached a decision does not constitute an unauthorized disclosure of the recommendation of censure.[13]

## V

In his final claim of error, Judge Kinsella argues that the council's proceedings were unconstitutional. This claim is twofold. First, Judge Kinsella argues that the legislature had no constitutional authority to create the Council on Probate Judicial Conduct. Second, he argues that the council's proceedings violated his right to procedural due process of law. We find no merit in either claim.

## A

Judge Kinsella's first constitutional claim is that because the Connecticut constitution does not specifically authorize the legislature to provide for the discipline of probate judges, the sole remedy for misconduct by an elected probate judge is for the electorate to deny the judge another term in office.[14] We disagree.

The principal case upon which this argument turns is *Adams* v. *Rubinow,* 157 Conn. 150, 251 A.2d 49 (1968). There we held (pp. 164–66, 169–70) that the legislature could not constitutionally authorize the chief

---

[13] We find entirely unproven the charge in the brief filed by Judge Kinsella on this appeal that "[i]t is obvious that from the first complaint in April, 1981 through the hearings and after, judgments were made that Judge Kinsella's rights were to be ignored in favor of the interests of the *Hartford Courant.*"

[14] Judge Kinsella recognizes that a probate judge is arguably subject to the legislature's impeachment power. Conn. Const., art. IX. He contends on this appeal that if the constitution does permit the impeachment of a probate judge, then impeachment is the sole disciplinary authority granted to the legislature. Our recent decision in *Kinsella* v. *Jaekle,* 192 Conn. 704, 723–24, 475 A.2d 243 (1984), put to rest any question concerning the legislature's constitutional authority to impeach a probate judge. *Kinsella* v. *Jaekle,* supra, did not, however, resolve the constitutional questions presented by this appeal.

court administrator to suspend a probate judge for misconduct. We explained that a legislature powerless to alter the constitutionally designated four year term of office of probate judges; Conn. Const., art. V, § 4; was equally powerless to prescribe a disciplinary suspension process that "in effect may actually amount to a removal." *Adams* v. *Rubinow, supra,* 166. At the same time, in upholding the rule-making and the administrative provisions of the statutes regulating the probate courts, we held that these statutes did not unconstitutionally intrude on the inherent judicial authority of the probate courts so as to violate the constitutional separation of powers. Id., 156–57. In that regard, we recognized that there is fundamentally greater legislative authority over legislative courts, created pursuant to article V, § 1 of the Connecticut constitution, than over constitutional courts.[15] Id., 156.

Judge Kinsella relies on *Adams* v. *Rubinow* to raise two constitutional challenges to §§ 45-11d through 45-11i, the statutes that empower the Council on Probate Judicial Conduct to impose disciplinary sanctions upon probate judges. He maintains, first, that because the legislature lacks the power to suspend a probate judge, it also lacks the power to censure him. Second, he maintains that disciplinary proceedings involving probate judges require the same specific constitutional underpinning[16] that exists for the Judicial Review

---

[15] Conn. Const., art. V, § 1 provides as follows:

"Sec. 1. The judicial power of the state shall be vested in a supreme court, an appellate court, a superior court, and such lower courts as the general assembly shall, from time to time, ordain and establish. The powers and jurisdiction of these courts shall be defined by law."

[16] Amendment 11 to the Connecticut constitution, adopted November 24, 1976, provides as follows:

"Article fifth of the constitution is amended by adding a new section to read as follows:

"In addition to removal by impeachment and removal by the governor on the address of two-thirds of each house of the general assembly, judges

Council in its disciplinary supervision of the judges of the Superior Court.

*Adams* v. *Rubinow* rebuts both of these arguments. Nothing in our constitution forbids the imposition of sanctions that do not operate to shorten the elected term of office of a judge of a legislative court. Courts of other jurisdictions have similarly held that a constitutional prescription of legislative impeachment as the sole method of removing a judge from office does not bar the imposition of lesser sanctions, such as suspension or censure, by other bodies, pursuant to other procedures. See *In the Matter of Bonin,* 375 Mass. 680, 711–12, 378 N.E.2d 669 (1978); *Matter of Storie,* 574 S.W.2d 369, 373 (Mo. 1978); *In re Mussman,* 112 N.H. 99, 101–102, 289 A.2d 403 (1972); *In re Hon. Charles E. Kading,* 70 Wis. 2d 508, 522–23, 235 N.W.2d 409 (1975); cf. *Dostert* v. *Neeley,* 498 F. Sup. 1144, 1153 (S.D. W. Va. 1980) (constitutional provision permitting temporary suspension of judge by supreme court of appeals not in conflict with constitutional provision for impeachment by legislature). For legislative courts such as the probate courts, "the General Assembly has the power to make reasonable rules of administration, practice and procedure provided that they do not significantly interfere with the orderly operation of the court while it remains in existence as a court." *Adams* v. *Rubinow,* supra, 156–57. Judge Kinsella has neither claimed nor shown that the legislative prescription of an administrative mechanism for the investigation, reprimand and censure of probate judges undermines the ability of the probate courts to function as courts

---

of all courts, except those courts to which judges are elected, may, in such manner as shall by law be prescribed, be removed or suspended by the supreme court. The general assembly may establish a judicial review council which may also, in such manner as shall by law be prescribed, censure any such judge or suspend any such judge for a definite period not longer than one year."

The legislature has given effect to the amendment by the enactment of General Statutes §§ 51-51i through 51-51u.

so as to violate the constitutional principles of separation of powers found in article second of the Connecticut constitution.[17] These constitutional challenges must, therefore, be rejected.

## B

Judge Kinsella's final claim is that the council's proceedings violated his right to procedural due process of law. This claim is composed primarily of attacks on the same procedural and evidentiary rulings that we have previously considered and determined to be without error. We likewise find no merit in the composite due process claim.

At their core, the due process clauses of the state and federal constitutions require that one subject to a significant deprivation of liberty or property must be accorded adequate notice and a meaningful opportunity to be heard. *Mathews* v. *Eldridge,* 424 U.S. 319, 333–34, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976); *Hart Twin Volvo Corporation* v. *Commissioner of Motor Vehicles,* 165 Conn. 42, 44–46, 327 A.2d 588 (1973). These requirements undoubtedly apply in the context of judicial disciplinary proceedings. *In the Matter of Del Rio,* 400 Mich. 665, 683–84, 256 N.W.2d 727 (1977); *In re Nowell,* 293 N.C. 235, 241–42, 237 S.E.2d 246 (1977).

As noted above, both Judge Kinsella and his attorney were adequately advised, by letter, of the nature of the charges against the judge. At the hearing, Judge Kinsella was represented by his attorney, who cross-examined witnesses and offered evidence on the judge's behalf. Judge Kinsella failed to substantiate his claims

[17] Article second of the Connecticut constitution provides as follows: "The powers of government shall be divided into three distinct departments, and each of them confided to a separate magistracy, to wit, those which are legislative, to one; those which are executive, to another; and those which are judicial, to another."

that any of the council's rulings exceeded the bounds of its discretion or that any of the council's members was prejudiced against him. There is nothing in the totality of the council's conduct in these proceedings to cause us to conclude that the individual claims of error, which we have rejected, combined to deprive Judge Kinsella of a meaningful opportunity to be heard. Furthermore, a careful review of all of the evidence before the council demonstrates that the council's central findings of fact were supported by clear and convincing evidence, that its conclusions about multiple violations of the Canons of the Code of Probate Judicial Conduct were warranted, and that its recommendation of public censure of Judge Kinsella was appropriate. Accordingly, Judge Kinsella's final claim of error must fail.

There is no error.

In this opinion the other judges concurred.