STATEWIDE GRIEVANCE COMMITTEE *v.* DANIEL V. PRESNICK
(6232)

BORDEN, O'CONNELL and STOUGHTON, Js.

Argued January 3—decision released May 9, 1989

*Daniel V. Presnick,* pro se, the appellant (defendant).
*Clinton L. A. Wright,* for the appellee (plaintiff).

O'CONNELL, J. The defendant attorney appeals from a judgment finding him in violation of the code of professional conduct and imposing sanctions therefor. This matter came to the trial court on a presentment from the statewide grievance committee alleging four separate and unrelated episodes of misconduct. The court dismissed two counts for insufficient evidence and found the defendant in violation of disciplinary regulations of the code of professional conduct on the remaining counts. It imposed a reprimand for the first violation and a one year suspension from the practice of law for the second violation. We find no error.

I

FACTS

The following facts are pertinent to this appeal. The defendant has been engaged in the practice of law as a member of the bar of this state since October 4, 1977. He maintains an office in the city of New Haven.

## A

### DEPARTMENT OF CHILDREN AND YOUTH SERVICES COMPLAINT

The scenario resulting in the reprimand arose out of a dispute between the defendant and the department of children and youth services (DCYS). In the fall of 1985, the Hamden school department contacted DCYS concerning a possible child abuse situation. The mother of the children involved engaged the defendant to represent her. The matter proceeded without resolution until DCYS filed a neglect petition with the Superior Court for Juvenile Matters in New Haven. See Practice Book § 1038 et seq. The defendant took a strong position that DCYS was infringing on the parent-child relationship. The thrust of his argument was that DCYS should be abolished and that its workers should be prosecuted.

On October 4, 1985, a hearing on the neglect petition was scheduled to be held in a courtroom on the third floor of the New Haven courthouse. Prior to the hearing, the DCYS workers and other concerned officials met with the defendant in a conference room adjacent to the juvenile courtroom. This conference was an effort to resolve the matter without trial. The defendant became quite agitated and appeared to lose control of himself while directing loud and abusive remarks to the DCYS personnel. He accused one DCYS worker of being a child molester and characterized DCYS as a nazi or neo-nazi organization. The defendant's boisterous and tumultuous conduct brought the court officer from the adjacent court area to the conference room to inquire whether his services were required to quell the uproar.

Not surprisingly, the matter was not settled in the conference room and the parties ultimately repaired

to the courtroom where a trial date was set. Upon leaving the courtroom, the defendant resumed ranting and raving, waving his arms and shouting as he followed the group down the stairs. This attracted the attention of onlookers and put at least one DCYS worker in fear.

The trial court found that the defendant's words and actions were designed to intimidate the DCYS workers and their attorney, thereby thwarting the judicial process and inhibiting the orderly functioning of the court. As a result, it concluded that this conduct violated disciplinary rule 1-102 (A) (6), which provides that a lawyer shall not "[e]ngage in any conduct that adversely reflects on his fitness to practice law." As a sanction, the court reprimanded the defendant and issued a warning that "if he engages in such conduct in the future, appropriate disciplinary action will be forthcoming."

## B

### REAL ESTATE COMPLAINT

The scenario leading to the defendant's suspension from practice began when he was retained to represent a client of advanced age and doubtful mental competence[1] in a municipal tax foreclosure action. A judgment of foreclosure by sale was rendered and January 11, 1986, was set as the sale date. The property was appraised at $68,000 in the foreclosure action. Notwithstanding the $68,000 appraisal, the defendant's aged client decided to sell the property for only $18,000.

Upon learning of his client's desire to sell his house at this bargain price, the defendant contrived to pur-

---

[1] The defendant filed a motion for the appointment of a guardian ad litem in the foreclosure action, reciting: "For reason that, due to advancing age, he is unable to assist in his defense in the matter and requires said protection to protect his legal and equitable interest in the property which is being foreclosed upon by the plaintiffs in this action." This motion was withdrawn before it was acted upon.

chase the property. He contacted his brother, a Florida lawyer, who agreed to form a corporation in that state for the purpose of acquiring the property. In addition, the defendant also contacted a Connecticut lawyer to perform certain duties in connection with the sale. That lawyer was not called in until after the agreement of sale had been executed. Moreover, he never met the client, saw the contract of sale, or knew anything about the purchaser, nor did he consider that an attorney-client relationship existed between him and the defendant's client. Thus, it was obvious to the trial court that this Connecticut lawyer was brought into the picture solely for the purpose of passing checks through his trustee account to create a facade that he was the client's attorney, rather than to act as independent counsel for the defendant's client.

On January 10, 1986, the defendant's client died. The client's estate refused to consummate the sale, presumably because of the $50,000 discrepancy between the appraisal value and the sale price. In December, 1986, the estate sold the property for $113,000 in an arm's length transaction.

The court found that the defendant's dealings with his client violated disciplinary rule 1-102 (A) (4), which provides that a lawyer shall not "[e]ngage in conduct involving dishonesty, fraud, deceit or misrepresentation." The court also found that he violated disciplinary rule 5-104 (A), which provides that "[a] lawyer shall not enter into a business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise his professional judgment therein for the protection of the client unless the client has consented after full disclosure." Consequently, the court suspended the defendant from practicing law for one year.

## II

### CONSTITUTIONALITY

The defendant's first claim is that the trial court erred in denying his motion to dismiss the presentment on grounds that the court lacked jurisdiction. The defendant's lengthy and tautological argument that the grievance committee is a constitutionally defective body, and in fact is a constitutionally defective court itself, misses the mark. Whether or not the grievance committee might constitutionally discipline attorneys is irrelevant to his situation. He was not disciplined by the grievance committee. His suspension from practice and reprimand were imposed by the Superior Court and not by the grievance committee.

It is elementary that "[t]he Superior Court possesses inherent authority to regulate attorney conduct and to discipline members of the bar." *Heslin* v. *Connecticut Law Clinic of Trantolo & Trantolo,* 190 Conn. 510, 523, 461 A.2d 938 (1983); *Grievance Committee* v. *Goldfarb,* 9 Conn. App. 464, 470, 519 A.2d 624, cert. denied, 203 Conn. 802, 522 A.2d 292 (1987); see also General Statutes § 51-84. The only action taken by the statewide grievance committee was to refer the matter to the Superior Court, which then proceeded in accordance with its inherent and statutory powers. Hence, the defendant's constitutional challenge to the jurisdiction of the statewide grievance committee is meritless.

## III

### CORRUPT MOTIVE OR EVIL INTENT

The defendant next claims that the trial court erred in imposing a suspension from practice without a finding that the defendant acted with a corrupt motive or with an evil intent. The defendant misconstrues three

Connecticut cases[2] as holding that a corrupt motive or evil intent is a prerequisite to suspension. The most that can be said is that these cases recognize the principle that attorneys who act with corrupt motives or evil intent should be disciplined, and that attorneys who act in good faith should not be disciplined. We agree with this principle in general, but we do not find that it mandates finding a corrupt motive or an evil intent as a prerequisite for disciplining an attorney by suspending him from the practice of law.

Here, the defendant was charged with specific violations of the disciplinary rules of the code of professional conduct, which resulted in his suspension. While the trial court may consider evidence of good motives and good faith in reaching its conclusions, neither of the disciplinary rules involved requires a finding of corrupt motive or bad faith. After a full evidentiary hearing, the court found to have been established by clear and convincing proof (see part IV, infra) that the defendant had violated each of the specified disciplinary rules. Nothing further was required to impose appropriate disciplinary action, including suspension from practice. There is no merit to this claim of error.

## IV

### STANDARD OF PROOF

In his third claim of error, the defendant argues that while a clear and convincing standard of proof furnishes a sufficient basis to support the reprimand, a suspension from practice requires proof beyond a reasonable doubt. Nevertheless, he fails to supply any precedent for this bifurcation. Since disciplinary matters are neither criminal proceedings nor civil proceedings; *In re*

---

[2] *Grievance Committee* v. *Ennis,* 84 Conn. 594, 80 A. 767 (1911); *Fairfield County Bar* v. *Taylor,* 60 Conn. 11, 22 A. 441 (1891); *Grievance Committee* v. *Gray,* 8 Conn. Sup. 267 (1940).

*Application of Pagano,* 207 Conn. 336, 339, 541 A.2d 104 (1988); it is logical that a question of the standard of proof should arise.

The standard of proof applicable to disciplining lawyers is a question of first impression in this state.[3] In *Council on Probate Judicial Conduct re: James H. Kinsella,* 193 Conn. 180, 476 A.2d 1041 (1984), however, a case of alleged misconduct of a judge, our Supreme Court elected to follow the vast majority of jurisdictions that have concluded that the proper standard for disciplinary proceedings involving judges is clear and convincing proof. Id., 190–91; see also American Bar Association Standards Relating to Judicial Discipline (1978) § 7.10. We see no reason why this same standard should not apply to disciplining lawyers, regardless of the ultimate sanction imposed. See ABA–BNA Lawyers' Manual on Professional Conduct (1984) § 101:201. We find no merit in the defendant's claim of a bifurcated standard.

## V

### FREE SPEECH

The defendant claims that his statements to the DCYS workers were protected by the constitutional guarantee of free speech.[4] He argues that "[t]his court must hold that the Grievance Court [sic] and the trial

---

[3] By inference, an early Superior Court case appears to have followed the preponderance of evidence standard. See *Grievance Committee* v. *Woolfson,* 2 Conn. Sup. 122, 127 (1935). Trial court cases, however, do not establish binding precedent. *J.M. Lynne Co.* v. *Geraghty,* 204 Conn. 361, 369, 528 A.2d 786 (1987).

[4] The defendant relies on the first, ninth and fourteenth amendments to the United States constitution. Although it is not clear from his brief, it appears that he also may be claiming the same free speech guarantee under the Connecticut constitution. Because he offers no separate analysis under the state constitution, we decline to undertake such analysis sua sponte. *State* v. *Hernandez,* 204 Conn. 377, 394 n.9, 528 A.2d 794 (1987); *State* v. *Camerone,* 8 Conn. App. 317, 321 n.1, 513 A.2d 718 (1986).

court has [sic] no jurisdiction to issue reprimand [sic] concerning the public statements of an attorney."[5] The defendant, however, does not cite any authority for this surprising declaration, nor are we aware of any. Moreover, we are not aware of any reason or policy for granting attorneys such carte blanche exemption from the laws limiting speech that are applicable to all members of our society.

We look to attorneys to be leading citizens of their communities, not as persons exempt from the norms of candor and honesty which we expect of other citizens. "The admirable and effective public and civic accomplishments of the overwhelming majority of the bar can be too easily impugned by the malfeasance and derelictions of one member of the bar. No amount of professional public relations can blot out the image of a dishonest lawyer." 1 W. Moller & W. Horton, Connecticut Practice Book Annot. (1988), p. 93.

It is irrelevant that the conduct in question, although in a courthouse, was not in the presence of the court. It is firmly established that misconduct of an attorney, whether it be in the practice of the profession or in matters dehors the practice of law, justifies discipline, including exclusion from the bar. *In re Application of Courtney,* 162 Conn. 518, 523, 294 A.2d 569 (1972); *Grievance Committee* v. *Broder,* 112 Conn. 269, 274, 152 A. 292 (1930). The admission of an attorney to the practice of law, " 'is upon the implied condition that his continued enjoyment of the right conferred is dependent upon his remaining a fit and safe person to exercise it, so that when he, *by misconduct in any capacity,* discloses that he has become or is an unfit or unsafe person to be entrusted with the responsibilities and obligations of an attorney, his right to continue in the

---

[5] We reject the defendant's contention that the grievance committee is in fact a lower court, albeit, a defectively organized one.

enjoyment of his professional privilege may and ought to be declared forfeited. As important as it is that an attorney be competent to deal with the oftentimes intricate matters which may be entrusted to him, it is infinitely more so that he be upright and trustworthy.' " (Emphasis added.) *In re Application of Pagano,* supra, 345, quoting *State* v. *Peck,* 88 Conn. 447, 450–51, 91 A. 274 (1914).

Here, the defendant's conduct and comments did not take place in the presence of the court. Rather, it was in a conference room and then in the hall and stairway of a courthouse that he appeared to be out of control, following and shouting at the DCYS workers that they were "nazi" or "neo-nazi" and screaming "there go the child molesters" in the presence of other people. The trial court found that the defendant's conduct and language constituted "fighting words" that were not entitled to constitutional protection.

Fighting words are those that are inherently inflammatory and simply by their utterance tend to incite a breach of the peace by persons to whom they are addressed. *Chaplinsky* v. *New Hampshire,* 315 U.S. 568, 572, 62 S. Ct. 766, 86 L. Ed. 1031 (1942); *State* v. *Lo Sacco,* 12 Conn. App. 481, 487, 531 A.2d 184 (1987). Such words "touch the raw nerves of one's sense of dignity, decency, and personality and . . . therefore tend to trigger an immediate, violent reaction." *State* v. *Battista,* 10 Conn. App. 499, 503, 523 A.2d 944 (1987); *State* v. *Hoskins,* 35 Conn. Sup. 587, 591, 401 A.2d 619 (1978). They are like sparks, capable of igniting individual reaction as well as setting off a group conflagration by provoking hostile reaction or inciting a riot. *State* v. *Beckenbach,* 1 Conn. App. 669, 679, 476 A.2d 591 (1984), rev'd on other grounds, 198 Conn. 43, 501 A.2d 752 (1985).

The trial court, having heard the witnesses, was in the best position to evaluate all of the circumstances and to determine whether the depreciatory epithets shouted at the DCYS workers in front of other people in the courthouse constituted "fighting words." *Pulaski* v. *Ledwith,* 5 Conn. App. 629, 631, 501 A.2d 396 (1985), cert. denied, 198 Conn. 803, 503 A.2d 1186 (1986). Having carefully reviewed the record, we have no difficulty in concluding that the defendant's epithets hurled at the DCYS personnel in the presence of other persons in the courthouse fall well within the pale of fighting words. See *State* v. *Beckenbach,* supra, 678.

There is no merit to the defendant's claim that his statements were protected by the constitution. Furthermore, in relying on the constitutional protection of free speech, the defendant overlooks the fact that regardless of the language used, his tumultuous and unprofessional conduct in the courthouse furnished a sufficient basis for the court's finding that his actions adversely reflected on his fitness to practice law in violation of DR 1-102 (A) (6).

## VI

### GRIEVANCE COMMITTEE HEARING SITE

The defendant also challenges the grievance committee's practice which may result in conducting their hearings in a judicial district other than the district in which the attorney to be disciplined practices. The defendant argues that requiring him to defend himself in a place "so far removed" from his office placed an unconstitutional hardship upon him, making it difficult for him to attend or to produce favorable witnesses.

The defendant's brief fails to specify which hearings he is contesting on this ground. This is relevant because there can be more than one hearing in each disciplinary matter. See Practice Book § 27B et seq. Moreover,

the only authority upon which the defendant relies in support of this claim is the Declaration of Independence. In its list of grievances against King George III, the Declaration recited that "he has called together legislative bodies at places unusual, uncomfortable, and distant from the depository of their public records for the sole purpose of fatiguing them into compliance with his measures. . . ." Assuming arguendo, that this clause has any relevance, we find its application to the facts of this case is anachronistic and ludicrous. Whatever may have been the hardships of intercolony travel in the days of Thomas Jefferson, the defendant has failed to show that, in this case, his ability to produce any witnesses was impaired by a hearing held at some unspecified location other than New Haven.

## VII

### GRIEVANCE COMMITTEE PROCEDURES

The defendant also challenges the procedures which occurred before the grievance committee. He failed, however, to attend any of the grievance committee hearings. If he was not present at the hearings, he cannot complain about lack of an opportunity to confront or cross-examine witnesses, nor can he complain about methods of proof allowed by the committee when he was not present to object thereto. Therefore, we decline to consider these claims of error.

## VIII

### REMAINING CLAIMS OF ERROR

We have carefully considered the defendant's remaining claims of error and find them confusing and difficult to understand. It is apparent that the defendant does not understand that "a hearing such as this is not the trial of a criminal or civil action or suit, but an investigation by the court into the conduct of one of its own officers, and that, therefore, while the complaint should

be sufficiently informing to advise the court of the matters complained of, and the attorney of the charges made against him, it is not required that it be marked by the same precision of statement, or conformity to the recognized formalities or technicalities of pleadings, as are expected in complaints in civil or criminal actions." *Grievance Committee of the Bar of New Haven County* v. *Sinn,* 128 Conn. 419, 424–25, 23 A.2d 516 (1941).

In Connecticut, it is firmly established that, "[i]n proceedings such as this a defendant is entitled to notice of the charges against him, to a fair hearing, and a fair determination, in the exercise of a sound judicial discretion, of the questions at issue, and to an appeal to this court for the purpose of having it determined whether or not he has in some substantial manner been deprived of such rights." Id., 422.

At any rate, the burden is on the defendant to show that there was error in the judgment from which the appeal was taken. *Janet* v. *Scarpetti,* 17 Conn. App. 825, 552 A.2d 1225 (1989); *Manzin* v. *United Bank & Trust Co.,* 6 Conn. App. 513, 517, 506 A.2d 169 (1986). He has not sustained his burden on these claims of error.

## IX

### Conclusion

The trial court has wide discretion in passing upon allegations of attorney misconduct. *In re Application of Courtney,* supra, 523; *State* v. *Peck,* supra, 460–61. Its action will not be disturbed unless the defendant has in some substantial way been deprived of his rights. Id.; *Grievance Committee* v. *Fasano,* 4 Conn. App. 173, 175, 493 A.2d 261 (1985); *Grievance Committee of the Bar of New Haven County* v. *Sinn,* supra, 422. Our plenary review discloses that the trial court's findings and

conclusions were amply supported by the record and that the disciplinary action imposed is appropriate.

There is no error.

In this opinion the other judges concurred.