The question in this injunction hearing concerns the effect to be given to the following restrictive covenant contained in the deed of property purchased by the defendant: "Said premises are conveyed subject to the following restrictions: that said premises shall be used solely and wholly for residential purposes; that no structure shall be erected, altered, placed or permitted to remain thereon, other than a one family dwelling house, not to exceed two stories in height, and conforming to and in harmony with existing structures in this tract...."
Defendant is the owner of a tract of land west of the development in which plaintiffs own a house, and having purchased, through an agent, the lot adjoining that of the plaintiffs, seeks to use it as a highway to connect his development, Barton Ridge, with that known as Sunset Farms.
The original tract comprising Sunset Farms was owned by Esther G. Mills and on April 7, 1941, by virtue of a map filed with the Town Clerk of North Haven the plot was divided into 53 lots. In the disposition of lots both before and after the filing of the map all deeds, with the exception of two, contained the restriction as above noted.
That one may subdivide a tract of land and sell several parcels to separate grantees imposing restrictions upon their use pursuant to a general plan of development or improvement is well recognized by the authorities. Baker vs. Lunde, 96 Conn. 530.
Such restrictions constitute negative easements which may be enforced by any grantee against any other grantee, each parcel becoming both a dominant and servient tenement. Armstrongvs. Leverone, 105 Conn. 464, 471; Gage vs. Schavoir,
100 id. 652, 662.
"The creation, in a building development scheme, of an area restricted to residential purposes contemplates the continued existence of such an area from which business is excluded.... *Page 168 
Purchasers of lots in such an area buy in reliance upon the fact that all other lots in the area are subject to the same restrictions as those contained in their own deeds, and that the entire development will retain its character as a purely residential district. So long as it remains possible to carry out the original purpose of the development each purchaser of a lot has a right to the protection of his easement in all the other lots in the restricted area, in the absence of conduct on his part constituting laches, waiver or abandonment. It is only when there has been a radical change in the conditions existing when the restrictive covenants were created which completely defeats the objects and purposes of the covenants so that they are no longer effective, and their enforcement would not afford the protection which was in the contemplation of the parties, that equity will hold the restrictions no longer enforceable."Bickell vs. Moraio, 117 Conn. 176, 181.
The defendant makes the claim that this particular lot has been dedicated for public purposes as a public highway but no evidence is offered to support this theory. The filing of the map of Barton Ridge in which lot No. 47 is set out as a street, did not constitute a dedication, for the defendant expressly agreed at the time it was filed that "if the extension of Barton Drive into Vista Road is prohibited by court action or otherwise, that it will not dead-end said Barton Drive." At most, the acceptance by the Town Clerk of North Haven was conditional upon there being no objection to the proposed highway layout.
The defendant makes the further claim that a fair interpretation of the restrictive clause in question would permit any use of the property which would be consistent with its use for residential purposes only. In other words any use of this lot which might be reasonably incidental to its use for residential purposes is permissible. It points out that the restrictions with respect to both sections are almost identical, "the quality of the buildings, size of the lots, and various other facts, constitute in effect one single homogeneous community" and the installation of the proposed street serving both communities is a permissible use reasonably incident to the use of the property for residential purposes only and not one contra to the restriction.
In support of this contention defendant cites the case ofMellitz vs. Sunfield Co., 103 Conn. 177. The restrictions in *Page 169 
that case, however, specifically limited the type of building to be erected, and no mention is made of the land itself. In the present case there is a definite limitation on the type of building to be erected and by the clause "that said premises shall be used solely and wholly for residential purposes" a definite limitation upon the use of the land itself is imposed.
Covenants restricting the free use of real property, although not favored, will nevertheless be enforced where the intention of the parties is clear in their creation, and the restrictions and limitations are confined to a lawful purpose and within reasonable bounds. Due regard must be had for the purpose contemplated by the parties to the covenant, and the words used must be given their ordinary and obvious meaning as understood at the time the instrument containing the covenants was executed. The expressed intent of the parties is the controlling factor. Easterbrook vs. Hebrew Ladies OrphanSoc., 85 Conn. 289.
That the parties intended the premises should be used only for residential purposes would seem to follow from the specific use of the words "solely and wholly" in connection with the word "premises" and in a clause separate and distinct from one defining the type of structure to be built.
The word residence is one of many meanings, but when used in this case clearly indicates its meaning to be a dwelling house where a person lives in settled abode. The purposes for which the property is to be used is limited not only to "residential" as stated in the covenant but this is the only purpose for which it is to be used, and the restriction covers the entire tract as indicated by the word "wholly." The use of the words "solely and wholly" would seem to exclude all uses of the property other than for residential purposes. Moore vs.Stevens, 90 Fla. 879, 106 So. 901.
The court is of the opinion that it was the intention of the parties by these covenants to not only limit the type of building to be erected but also to limit the specific use to which the property itself was to be employed and the defendant by attempting to make use of the lot as a roadway goes beyond the restrictions imposed.
Whereupon it is adjudged that the defendant be and it is hereby temporarily enjoined, under penalty of $1,000, against the use of the following described property for a highway or street: *Page 170 
 All that certain piece or parcel of land, with all the improvements thereon, situated in the Town of North Haven, in said County and State, known as lot No. 47 on a Map of Sunset Farms, Map Number 2, North Haven, Conn., owned by Charles Mills, North Haven, Conn., surveyed by Frederick C. Hahn, Scale 1 inch equals 100 feet, October 1, 1940, on file in the North Haven Town Clerk's Office, said lots being bounded:
EAST by Vista Road, 88 feet;
 SOUTH by lot No. 48 on said map, 145 feet, more or less;
 WEST by land now or formerly of Robert Barton, 88 feet, more or less;
 NORTH by lot No. 46 on said map, 141 feet, more or less;
until further order of the court in the premises.