[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT
The present action was commenced on May 29, 1996, when the plaintiffs, a group of homeowners, filed a motion for an order to show cause why a temporary restraining order should not enter, an ex parte motion for a temporary injunction, and a permanent injunction. The plaintiffs are seeking to prevent the Parish of Christ Church, the defendant, from building a rectory on property located in Putnam Manor that is owned by the defendant. Putnam Manor is located in Greenwich, Connecticut and consists of twenty-three lots, six of which are owned by the defendant. The chapel is located on lot one. The defendant also owns lots two through six (the triangle) which are located across from the chapel. The lots are contiguous and undeveloped by the defendant. The plaintiffs are the individual owners of lots seven through eleven, seventeen through twenty, twenty-two and twenty-three. They allege that Putnam Manor was developed pursuant to a uniform scheme. (Complaint, ¶ 2.) They allege that their deeds, and a majority of the other deeds to the lots in Putnam Manor, contain a restrictive covenant which states that the lots may not be used for "any business purpose whatsoever, or for any other purpose, other than a strictly private residence," and that this covenant runs with the land. (Complaint, ¶¶ 5, 7.) They further allege that the construction of the rectory and the inhabitance of the structure by the rector and his family breaches the restrictive covenant because the rector will be conducting church business in the residence, violating the requirement that any residence be "strictly private." (Complaint, ¶¶ 18-21.) On May 29, 1996, the court, Karazin, J., denied the ex parte temporary restraining order and granted the order to show cause why a temporary restraining order should not issue.
On June 17, 1996, the court, Nadeau, J., after hearing oral argument, denied the plaintiff's request for injunctive relief with regard to the construction of the dwelling and granted temporary injunctive relief with regard to occupancy of the CT Page 3502 dwelling by the rector. During the hearing the defendant's attorney moved for summary judgment on the ground that the plaintiffs' action was barred by General Statutes § 47-33, the Marketable Record Title Act (MRTA). The court requested the parties' counsel to submit briefs on the issue.
On August 15, 1996, the defendant filed its motion for summary judgment on the grounds that the restrictive covenant relied on by the plaintiffs has been extinguished by MRTA and, in the alternative, that the defendant's use of the property complies with the restrictive covenant. The defendant attached an affidavit, a certified deed to lots two through six, a certified deed to a parcel of land formerly owned by the defendant, a certified deed conveying that parcel to a third party and a certified transcript of the hearing in Asjes v. Parish of ChristChurch, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 152470 (June 17, 1996, Nadeau, J.). The defendant also filed a memorandum of law in support accompanied by nine exhibits.
On October 23, 1996, the plaintiffs filed an objection to the defendant's motion for summary judgment and a "cross-motion for summary judgment" on the ground that a statutory exception to the MRTA provides that the defendant's property is still subject to the restrictive covenant. The plaintiffs also filed a "memorandum of law in support of their motion for summary judgment and in opposition to the defendant's motion for summary judgment."[1]
The memorandum in opposition was accompanied by eleven exhibits, listed as A-K, consisting, in relevant part, of certified deeds from the Greenwich Land and Development Company (GLAD) to the original purchasers of lots one through twenty-three, the certified deeds of the subsequent owners of lots seven, eight, ten, eleven, eighteen, nineteen, twenty-two and twenty-three, a certified map of the planned subdivision filed by GLAD and two church pamphlets discussing the new rectory.
"Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse CT Page 3503 claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue." (Citation omitted; internal quotation marks omitted.)Home Ins. Co. v. Aetna Life Casualty Co., 235 Conn. 185, 202,663 A.2d 1001 (1995). "As the party moving for summary judgment, the plaintiff is required to support its motion with supporting documentation, including affidavits." Heyman Associates No. 1 v.Insurance Co. of Pennsylvania, 231 Conn. 756, 796, 653 A.2d 122
(1995). "[T]he party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue." (Internal quotation marks omitted.) Doty v.Mucci, 238 Conn. 800, 808, 679 A.2d 945 (1996).
The defendant moves for summary judgment on the grounds that General Statutes § 47-33b et seq. (MRTA) extinguished the purported restrictive covenant relied upon by the plaintiffs, and even if MRTA did not extinguish the covenant, the defendant's planned use of the property complies with the restrictive covenant.
The defendant argues that by operation of law MRTA extinguishes any interest in real property that is not specifically described or referenced in the chain of title to the property during a forty year period. In support of its argument the defendant offers the affidavit of Peter Byrne, a title searcher with Nutmeg Title. Byrne attests that on August 8, 1996, he examined the Greenwich Land Records to determine the ownership of the triangle. After examining the records he determined that the triangle is subject to "[r]estrictive covenants and agreements of record created and/or imposed upon said premises by certain deeds heretofore given by the Grantor," but that the triangle deed also provides, in relevant part, that "[i]t is understood and agreed that this deed is not intended to and does not impose upon the lots hereby conveyed any restriction or covenant whatsoever, implied or otherwise." (Affidavit of Peter Byrne, ¶ 5(b)(1)(c)). Byrne further attests that "there are no other matters of record affecting the title to [the triangle] and there have been no notices filed in [the triangle's] chain of title from the date of the root of title, November 14, 1953, through the present." (Affidavit of Peter Byrne, ¶ 5 (b)(1)(d)). The defendant contends that because it has owned the triangle for forty-three years, during which time there has been no notice of claim based on a restrictive covenant recorded against the triangle, that MRTA has cleansed the title to the CT Page 3504 triangle by operation of law.
The defendant further argues that the reference in the triangle deed to restrictions in "certain deeds" is not specific enough to satisfy the requirements of § 47-33d because the reference fails to give the specific page volume and page number where the "certain deeds" are located.
In their memorandum in opposition, the plaintiffs contend that the restrictive covenant still applies to the defendant's property pursuant to § 47-33d(4). The plaintiffs argue that, during the forty year period that the defendant has owned the triangle, the plaintiffs' predecessors in interest transferred other lots in Putnam Manner and recorded these deeds. The plaintiffs claim that all of these deeds contain the restrictive covenant and at least four of them provide that this restriction applies to all of the lots in Putnam Manor. The plaintiffs argue that the recordation of these deeds constitutes an assertion of the plaintiffs' interest which prevents MRTA from cleansing the defendant's title to the triangle.
General Statutes § 47-33c provides in pertinent part that "[a]ny person having the legal capacity to own land in this state, who has an unbroken chain of title to any interest in land for forty years or more, shall be deemed to have a marketable record title[2] to that interest, subject only to the matters stated in section 47-33d. A person has such an unbroken chain of title when the land records of the town in which the land is located disclose a conveyance or other title transaction[3], of record not less than forty years at the time the marketability is to be determined, which conveyance or other title transaction purports to create such interest in land, or which contains language sufficient to transfer the interest, either in (1) the person claiming that interest, or (2) some other person from whom, by one or more conveyances or other title transactions of record, the purported interest has become vested in the person claiming the interest; with nothing appearing of record, in either case, purporting to divest the claimant of the purported interest." Section 47-33d provides in relevant part that "[s]uch marketable record title is subject to: (1) All interests and defects which are created by or arise out of the muniments of which the chain of record title is formed; provided a general reference in the muniments, or any of them, to easements, use restrictions or other interests created prior to the root of title[4] are not sufficient to preserve them unless specific CT Page 3505 identification is made therein of a recorded title transaction which creates the easement, use restriction or other interest . . . (4) any interest arising out of a title transaction which has been recorded subsequent to the effective date of the root of title from which the unbroken chain of title of record is started; provided such recording shall not revive or give validity to any interest which has been extinguished prior to the time of the recording by the operation of section 47-33e."
The following facts, regarding the application of MRTA, are taken from the exhibits submitted by both parties and are not in dispute. In 1917, GLAD filed a map of the Putnam Manor subdivision, and in the period from 1916 to 1922, GLAD sold by deed all of the lots except for lots two[5] through six. All of these deeds contain a restrictive covenant that prohibits the use of the lots for "any business purpose whatsoever, or for any other purpose, other than a strictly private residence." Lot one was purchased by the defendant in 1919, however, and that deed does not contain the restrictive covenant. In 1919, the owners of lots ten, eleven, twelve, eighteen, nineteen, twenty-one and twenty-three released lot one from the restrictive covenant by way of a quit claim deed dated August 4, 1919. (Plaintiffs' exhibit A.) Thereafter, GLAD sold lots seven, eight, nine, fourteen, fifteen, sixteen, seventeen, twenty and twenty-two, and in the deeds to those lots GLAD specifically exempted lots one through six from the "strictly private residence" restriction. (Plaintiffs' exhibit B.) By deed dated November 14, 1953, the defendant acquired lots two through six. (Plaintiffs' exhibit B.) The defendant has been the sole owner of the undeveloped lots two through six since the 1953 acquisition. (Affidavit of Peter Byrne.)
Between 1953 and 1993 the following lots were transferred by deed and recorded in the Greenwich record office. In 1971, lot ten was sold and the deed was recorded. The 1971 deed provided that the lot was subject to the restrictions as contained in the original deed dated 1917. The original deed to lot ten contained the restrictive covenant and provided that the restriction applied to all of the lots in Putnam Manor. In 1982, lot eight was sold and the deed was recorded. The 1982 deed provided that lot eight was subject to the restrictions as contained in the original deed dated 1922. The original deed to lot eight restricted lot eight, but it exempted lots one through six from the private residence restriction. In 1983, lot twenty was sold and the deed was recorded. The 1983 deed provided that lot twenty CT Page 3506 was subject to the restrictions as contained in the original deed dated 1919. The original deed to lot twenty restricted lot twenty, but it exempted lots one through six from the private residence restriction. In 1985, lot eleven was sold and the deed was recorded. The 1985 deed provided that lot eleven was subject to the restrictions as contained in the original deed dated 1916. The original deed to lot eleven restricted contained the restrictive covenant and provided that the restriction applied to all of the lots in Putnam Manor. In 1989, lot twenty-three was sold and the deed was recorded. The 1989 deed provided that lot twenty-three was subject to the restrictions as contained in the original deed dated 1918. The original deed to lot twenty-three contained the restrictive covenant and provided that the restriction applied to all of the lots in Putnam Manor. In 1992, lot seven was sold and the deed was recorded. The 1992 deed provided that lot seven was subject to the restrictions as contained in the original deed dated 1922. The original deed to lot seven exempted lots one through six from the private residence restriction. (Plaintiffs' exhibit 1.)[6]
The Supreme Court has interpreted MRTA to provide that "any person who has an unbroken record chain of title to an interest in land for a period of forty years, plus any additional period of time necessary to trace the title back to the latest connecting title instrument of earlier record (which is the `root of title' under the act) has a `marketable record title' subject only to those pre-root of title matters that are excepted under the statute or are caused to reappear in the latest forty year record chain of title." (Internal quotation marks omitted.)Branch v. Occhionero, 239 Conn. 199, 203 n. 5., ___ A.2d ___ (1996). In the present case, the defendant's root of title is the 1953 deed transferring the triangle from GLAD to the defendant.[7] The defendant's root of title is a "conveyance or other title transaction" recorded after the date when the "conveyance or other title transaction" creating the restrictive covenant was recorded. Therefore, unless one of the exceptions contained in § 47-33d apply, the plaintiffs, or their predecessors in interest, would have had to file a notice of claim or some other title transaction before 1993 in order to preserve their interest. Mizla v. Depalo, 183 Conn. 59, 65,438 A.2d 820 (1981). The reference in the 1953 triangle deed to other restrictions imposed by certain deeds is not specific enough to prevent the operation of MRTA pursuant to § 47-33d(1). See Connecticut Bar Association, Standards of Title, Standard 3.10 (1980) (example D indicates that a specific reference in the deed CT Page 3507 in question to another recorded deed includes the volume and page number where that deed appears in the land records of the town where the land is located).[8] "If, however, the `conveyance or other title transaction' creating [the restriction] was recorded after the date of [the defendant's] root of title, then [the plaintiffs'] interest in [the restriction] is still valid." Mizlav. Depalo, supra, 183 Conn. 65. Accordingly, the resolution of this issue turns on whether the recordation of the deeds to lots ten, eleven and twenty-two, which were transferred between 1971 and 1989, operates to prevent the cleansing of the defendant's title to the triangle.[9]
 Mizla v. Depalo, supra, is instructive with respect to this issue. In Mizla, the defendant's decedent and predecessor in title filed a "Notice of Interest in Land" in July, 1974, regarding an easement that crossed a servient estate owned by the plaintiff. The plaintiff brought an action to quiet title and argued that the defendants' purported easement had been extinguished by operation of § 47-331 because the notice had not been filed on or before July 1, 1971.[10] The trial court, based on a "mistaken belief that the plaintiff's root of title was recorded in 1895," had granted summary judgment for the plaintiff and the defendants appealed. Id., 63. On appeal, the Supreme Court found that the plaintiff's root of title of the servient estate was a deed recorded in June, 1885, conveying the land to the plaintiff. Id., 66. The court determined that the defendants' interest in the land "arose out of the title transaction recorded in 1895 which created the easement and was subsequent to the effective date of the plaintiff's root of title . . . ." Id. The court held that the defendants' interest in the plaintiff's land, vis-a-vis the easement, was valid "because it comes within that exception set out in General Statutes § 47-33d which provides `[s]uch marketable record title shall be subject to . . . (d) any interest arising out of a title transaction which has been recorded subsequent to the effective date of root of title from which the unbroken chain of title is started . . . ." Id., citing to General Statutes §47-33d. Thus, the court concluded that General Statutes § 47-331 did not operate to bar the validity of the defendants' interest.
In the present case, lots ten, eleven and twenty-three were transferred by deed subsequent to the defendant's root of title in 1953. (Plaintiff's Exhibit 1.) The deeds to these lots contained a specific reference to the volume and page number of CT Page 3508 the original deeds containing the restrictive covenants. (Plaintiff's Exhibit 1.) The title transactions occurred within forty years of the defendant's claimed root of title, and thus, the defendant's marketable title has not been cleansed by MRTA and may be subject to the plaintiffs' interest in land arising out of the recording of the deeds to lots ten, eleven and twenty-three. Accordingly, the defendant is not entitled to summary judgment because, as a matter of law, § 47-33d(4) prevents the cleansing of the defendant's title to the triangle property.
In the alternative, the defendant moves for summary judgment on the ground that the defendant's planned use of the triangle complies with the restrictive covenant. In its memorandum of law in support, the defendant argues that its plan to house its rector in a residence located on the triangle does not violate the restrictive covenant because the rectory, albeit the residence of the rector, is a private residence.
In opposition to the defendant's motion, the plaintiffs argue that summary judgment is inappropriate because there are issues of material fact regarding whether the proposed use of the rectory violates the restrictive covenant. The plaintiffs argue that the restriction only allows a "strictly private" residence. They contend that the rectory will not be used as a "strictly private" residence because by virtue of the defendant's ownership of the house it will be used to conduct church business. In support of this argument the plaintiffs note that the size and design of the rectory make it usable as a place for church parishioners to comfortably gather. (Plaintiffs' exhibit K.)[11] The plaintiffs also observe that its location, across the street from the chapel, makes it easily accessible to parishioners. (Plaintiffs' exhibit K.) The plaintiffs further note that when the rector occupies the rectory the property may then be exempt from taxation pursuant to General Statutes §12-81, which provides for a tax exception for housing used by clergy. The plaintiffs contend that it is only when the property is used for a religious purpose that the property is exempt from taxation. They argue that these potential uses demonstrate that the planned use is other than residential and violates the restriction.
"The primary rule of interpretation of such [i.e. restrictive] covenants is to gather the intention of the parties from their words, by reading, not simply a single clause of the agreement, but the entire context, and, where the meaning is CT Page 3509 doubtful, by considering such surrounding circumstances as they are presumed to have considered when their minds met . . . . The controlling fact, when discovered, is the expressed intent. Intent unexpressed will be unavailing. In the discovery of the expressed intent there are certain accepted principles of construction to be observed." (Citations omitted; internal quotation marks omitted.) Easterbrook v. Hebrew Ladies OrphanSociety, 85 Conn. 289, 295, 82 A. 561 (1912).
"One is, that the words used are to be taken in their ordinary and popular sense, unless they have acquired a peculiar or special meaning in the particular relation on which they appear, or in respect to the particular subject-matter, or unless it appears from the context that the parties intended to use them in a different sense. . . ." (Citations omitted; internal quotation marks omitted.) Id., 295-96.
"Another is, that if the language of a restrictive covenant, when read in the light which the context and surrounding circumstances throw upon it, remains of doubtful meaning, it will be construed against rather than in favor of the covenant. . . . Such covenants being in derogation of the common-law right to use land for all lawful purposes that go with title and possession, they are not to be extended by implication. . . ." (Citations omitted; internal quotation marks omitted.) Id., 296.
"[I]t is a recognized rule that where a particular enumeration is followed by general descriptive words, the latter will be understood as limited in their scope to matters and things of the same general kind or character as those specified in the particular enumeration, unless there is something to show a contrary intent. When no such contrary intent appears, the general words will be construed with reference to the context, and the specific terms with which the general are associated in the context will control the meaning to be given to the more general expression used in their immediate connection." (Citations omitted; internal quotation marks omitted.) Id.
In the present case, the restriction provides "[t]hat no building shall be erected on any of the said lots other than one dwelling house and such outbuildings as are usually incidental thereto, which dwelling house shall be a one family dwelling house and which dwelling house shall be erected at a cost not less than $7000, and furthermore that said premises will not be used for any business purpose whatsoever, or for any other CT Page 3510 purpose, other than a strictly private residence." (Deeds of lots10-12, 18, 19, 21, 23.) A reading of the restriction, in light of the surrounding circumstances, indicates that the grantor did seek to limit not only the construction of certain types of buildings on the lots, but also intended to limit the use of those buildings to strictly residential use. See Maloney v. VeggoF. Larsen Co., 11 Conn. Sup. 166, 169, 523 A.2d 507 (1942) (stating that the use of the words wholly and solely in conjunction with residential use indicates the grantor intended to limit not only the type of structure built but the use of the structure when completed).
The defendant claims that the premises will be used for strictly residential purposes, but it fails to offer any evidence to support its claim. Conversely, the plaintiffs have submitted two documents created by the defendant which demonstrate the possibility that the building will be used as an annex of the actual chapel. (Plaintiffs' exhibits J, and K.) Exhibit J is a document created by the defendant and entitled "A Fact Sheet for the Future." It discusses the parish's need to provide a residence for the rector. The fact sheet further discusses the various alternatives that were open to the parish in anticipation of a parish vote to resolve the issue. Section IV (C) indicates that the parish may use the residence for "smaller church functions." Exhibit K is a copy of a pamphlet created by the defendants and entitled: "The Parish of Christ Church, Greenwich, Requirements of the New Rectory." This document provides, among other things, that the property "will accommodate various social events to which the rector and/or spouse invite parishioners, i.e. gatherings in the living room, seated and buffet dinners, teas, parties and cook outs." Therefore, the defendant has failed to carry its burden of demonstrating the non-existence of a genuine issue of material fact regarding how it plans to use the rectory.
For the foregoing reasons the defendant's motion for summary judgment is denied.
D'ANDREA, J.