PETER A. THALHEIM *v.* TOWN OF
GREENWICH ET AL.
(SC 16363)

Borden, Katz, Vertefeuille, Zarella and Pellegrino, Js.

Argued April 18—officially released July 17, 2001

*Peter A. Thalheim,* pro se, the plaintiff in error.

*Gregory T. D'Auria,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* attorney general, for the intervening defendant in error.

### Opinion

KATZ, J. This case is before us on a writ of error[1] brought by the plaintiff in error, Peter A. Thalheim, an attorney, who seeks reversal of an order of the trial court sanctioning him for filing an amicus brief in the underlying matter; see *Leydon* v. *Greenwich,* 57 Conn.

[1] Named as defendants in error in the writ were: the town of Greenwich; the board of selectmen of Greenwich; John Margenot, first selectmen of Greenwich in 1995; the Lucas Point Association, Inc.; and Brenden P. Leydon.

A writ of error may be brought to this court pursuant to Practice Book § 72-1 and General Statutes § 52-272 et seq. Practice Book § 72-1 provides: "Writs of Error; In General

"(a) Writs of error for errors in matters of law only may be brought from a final judgment of the superior court to the supreme court.

"(b) No writ of error may be brought in any civil or criminal proceeding for the correction of any error where (1) the error might have been reviewed by process of appeal, or by way of certification, or (2) the parties, by failure timely to seek a transfer or otherwise, have consented to have the case determined by a court or tribunal from whose judgment there is no right of appeal or opportunity for certification."

The claim sought to be reviewed by the plaintiff in error, Peter A. Thalheim, could not have been reviewed by this court by way of appeal because he was not a party in the underlying action. Only an aggrieved party may appeal from a final judgment of the trial court. See Practice Book § 61-1. Consequently, a writ of error is the proper vehicle for review of Thalheim's claim.

App. 712, 750 A.2d 1122, cert. granted, 254 Conn. 904, 905, 755 A.2d 881, 882 (2000); *Leydon* v. *Greenwich*, 57 Conn. App. 727, 750 A.2d 492 (2000); without first obtaining permission from the court or filing an appearance in the case. Brenden Leydon and the town of Greenwich, the plaintiff and the defendant, respectively, in the underlying action, informed this court that they did not intend to file a brief or participate in this proceeding despite being named by Thalheim as the defendants in error.[2] We subsequently granted the motion of the attorney general, Richard Blumenthal, to intervene and be made the defendant in error in order to defend the trial court's decision. We conclude that the trial court did not abuse its discretion. Accordingly, we affirm the judgment of the trial court.

The following facts and procedural history as set out by the Appellate Court are relevant to our resolution of this writ. "In April, 1995, Brenden P. Leydon filed an amended complaint challenging an ordinance of the defendant town of Greenwich (town) that restricts use of its public parks and public beaches to residents of the town. On August 30, 1995, the trial court ordered that notice be published inviting interested parties to apply to the court to be made parties to that action. The court's order required Leydon to publish the notice prior to September 29, 1995, in the Greenwich Time newspaper and further stated that any person desiring to be made a party to the action must apply within twenty-one days of the publication date. Thalheim did not move to intervene to become a party.

"The [trial] court heard the underlying case in early 1998 with final arguments scheduled for March 26, 1998. On March 23, 1998, the trial judge received, by hand

---

[2] When this issue arose in the Appellate Court, the remaining defendant in the underlying matter, the Lucas Point Association, Inc., expressed that it did not wish to participate in that appeal, stating that the matter did not affect its interests. It has made no attempt to participate in the present proceeding.

delivery through the clerk's office, a twenty-three page 'Amicus Memorandum of Law In Opposition Of Relief Claimed By Plaintiff,' signed by Thalheim. Although [Thalheim] is an attorney admitted to the practice of law in this state, his brief did not identify him as purporting to represent any party in the action, nor did it represent that he had filed an appearance in the case or had been granted permission to file an amicus curiae brief. On March 26, 1998, the [trial] court discussed the receipt of the brief with the attorneys in the case. The consensus was that the court should not read the brief, and it did not do so."[3] *Leydon* v. *Greenwich,* supra, 57 Conn. App. 728–30.

The following additional facts are also relevant to this writ. On July 8, 1998, the trial court rendered judgment for the defendants in the underlying action,[4] and on July 9, 1998, the court issued an order to Thalheim to appear and show cause why he should not be sanctioned under General Statutes § 51-84[5] for filing an amicus curiae brief without following the rules of practice. Because the notice did not specify which rules were alleged to have been violated, Thalheim wrote to the trial court requesting notification as to which rules he allegedly had violated. The court thereafter informed Thalheim that it was his burden to show the court which rule he had followed in filing the brief.

---

[3] "The [trial] court stated: 'I have not decided yet what I am doing about the improperly filed amicus curiae brief, but I intend to do something. I will definitely not read it, but I have a lawyer who has not requested permission to file an amicus curiae, and I think it needs to be addressed. So, at some point, I will do that, probably after I render [a] decision.' " *Leydon* v. *Greenwich,* supra, 57 Conn. App. 729 n.2.

[4] That case is currently pending before this court on appeal. See *Leydon* v. *Greenwich,* 254 Conn. 904, 905, 755 A.2d 881, 882 (2000).

[5] General Statutes § 51-84 provides: "Attorneys subject to rules. (a) Attorneys admitted by the Superior Court shall be attorneys of all courts and shall be subject to the rules and orders of the courts before which they act.

"(b) Any such court may fine an attorney for transgressing its rules and orders an amount not exceeding one hundred dollars for any offense, and may suspend or displace an attorney for just cause."

At the July 22, 1998 show cause hearing, the trial court determined that an amicus curiae brief could not be filed without first obtaining permission from the court. Accordingly, it concluded that Thalheim had violated Practice Book §§ 3-2 through 3-8, 5-1, 10-6 and 11-1 because he had not filed an appearance in the underlying action or obtained permission from the court to file an amicus curiae brief.[6] The court sanctioned

---

[6] Practice Book § 3-2 provides in relevant part: "Time to File Appearance

"(a) After the writ has been filed the attorney for any party to any action, or any party himself or herself, may enter his or her appearance in writing with the clerk of the court location to which such action is returnable. Except where otherwise prescribed herein or by statute, an appearance for a party in a civil or family case should be filed on or before the second day following the return day. Appearances filed thereafter in such cases shall be accepted but an appearance for a party after the entry against such party of a nonsuit or judgment after default for failure to appear shall not affect the entry of the nonsuit or any judgment after default. . . ."

Practice Book § 3-3 provides: "Form and Signing of Appearance

"Each appearance shall (1) be typed or printed on size 8-1/2" x 11" paper, (2) be headed with the name and number of the case, the name of the court location to which it is returnable and the date, (3) be legibly signed by the individual preparing the appearance with the individual's own name and (4) state the party or parties for whom the appearance is being entered and the official (with position or department, if desired), firm, professional corporation or individual whose appearance is being entered, together with the juris number assigned thereto if any, the mailing address and the telephone number. This section shall not apply to appearances entered pursuant to Section 3-1."

Practice Book § 3-4 provides: "Filing Appearance with the Clerk—Copies

"Appearances shall be filed with the clerk of the court location where the matter is pending. Whenever an appearance is filed in any civil or family action returnable to a judicial district of the superior court, only an original need be filed and the clerk with whom it is filed shall cause notice thereof to be given to all other counsel and pro se parties of record in the action. Whenever an appearance is filed in any criminal case or juvenile matter, only the original need be filed. Whenever an appearance is filed in any civil action returnable to a geographical area of the superior court, an original and sufficient copies for each party to the action must be filed. This section shall not apply to appearances entered pursuant to Section 3-1."

Practice Book § 3-5 provides in relevant part: "Service of Appearances on Other Parties—when Required

"(a) In summary process actions the attorney for the defendant or, if there is no such attorney, the defendant himself or herself, in addition to

complying with Section 3-4, shall mail or deliver a copy of the appearance to the attorney for the plaintiff or, if there is no such attorney, to the plaintiff himself or herself. . . .

"(d) Service of such appearances shall be made in accordance with Sections 10-12 through 10-17. Proof of service shall be endorsed on the appearance filed with the clerk."

Practice Book § 3-6 provides: "Appearances for Bail or Detention Hearing Only

"(a) An attorney, prior to the entering of an appearance by any other attorney, may enter an appearance for the defendant in a criminal case for the sole purpose of representing the defendant at a hearing for the fixing of bail. Such appearance shall be in writing and shall be styled, 'for the purpose of the bail hearing only.' Upon entering such an appearance, that attorney shall be entitled to confer with the prosecuting authority in connection with the bail hearing.

"(b) An attorney may enter an appearance in a delinquency proceeding for the sole purpose of representing the respondent at any detention hearing; such appearance shall be in writing and styled 'for the purpose of detention hearing only.' "

Practice Book § 3-7 provides in relevant part: "Consequence of Filing Appearance

"(a) Except by leave of the judicial authority, no attorney shall be permitted to appear in court or to be heard in behalf of a party until the attorney's appearance has been entered. No attorney shall be entitled to confer with the prosecuting authority as counsel for the defendant in a criminal case until the attorney's appearance has been so entered. . . ."

Practice Book § 3-8 provides: "Appearance for Represented Party

"Whenever an attorney files an appearance for a party, or the party files an appearance for himself or herself, and there is already an appearance of an attorney or party on file for that party, the attorney or party filing the new appearance shall state thereon whether such appearance is in place of or in addition to the appearance or appearances already on file. If the new appearance is stated to be in place of any appearance or appearances on file, the party or attorney filing that new appearance shall serve, in accordance with Sections 10-12 through 10-17, a copy of that new appearance on any attorney or party whose appearance is to be replaced by the new appearance. Unless a written objection is filed within ten days after the filing of an in-lieu-of appearance, the appearance or appearances to be replaced by the new appearance shall be deemed to have been withdrawn and the clerk shall make appropriate entries for such purpose on the file and docket. The provisions of this section regarding parties filing appearances for themselves does not apply to criminal cases."

Practice Book § 5-1 provides: "Trial Briefs

"The parties may, as of right, or shall, if the judicial authority so orders, file, at such time as the judicial authority shall determine, written trial briefs

opinion; ordering him "to read the Connecticut Practice Book, to listen to audiocassettes available from the Connecticut Bar Association pertaining to civil practice and procedure in Connecticut courts, and to certify to the court within four months that he had listened to the tapes and read the entire Connecticut Practice Book, including the rules concerning professional conduct." *Leydon* v. *Greenwich*, supra, 57 Conn. App. 730.

Although not a party in the underlying action, Thalheim filed a direct appeal from the trial court's order in the Appellate Court, under the case caption "*Leydon* v. *Town of Greenwich*," on August 7, 1998. Id. Pursuant to Practice Book § 67-3,[7] both the plaintiff and the defendant in the underlying case indicated that they did not intend to file a brief or participate in the appeal. The

discussing the issues in the case and the factual or legal basis upon which they ought to be resolved."

Practice Book § 10-6 provides: "Pleadings Allowed and Their Order

"The order of pleading shall be as follows:

"(1) The plaintiff's complaint.

"(2) The defendant's motion to dismiss the complaint.

"(3) The defendant's request to revise the complaint.

"(4) The defendant's motion to strike the complaint.

"(5) The defendant's answer (including any special defenses) to the complaint.

"(6) The plaintiff's request to revise the defendant's answer.

"(7) The plaintiff's motion to strike the defendant's answer.

"(8) The plaintiff's reply to any special defenses."

Practice Book § 11-1 provides: "Form of Motion and Request

"Every motion, request, application or objection directed to pleading or procedure, unless relating to procedure in the course of a trial, shall be in writing and shall, except in the case of a request, have annexed to it a proper order, and a proper order of notice and citation, if one or both are necessary. Such motion, request, application or objection shall be served on all parties as provided in Sections 10-12 through 10-17 and, when filed, the fact of such service shall be endorsed thereon."

[7] Practice Book § 67-3 provides in relevant part: "Any party whose interest in the judgment will not be affected by the appeal and who intends not to file a brief shall inform the appellate clerk of this intent prior to the deadline for the filing of the appellee's brief. In the case of multiple appellees, an appellee who supports the position of the appellant shall meet the appellant's time schedule for filing a brief. . . ."

attorney general moved to intervene and be made a party defendant in order to defend the decision of the trial court. The Appellate Court granted this request. On May 16, 2000, in light of our decision in *State* v. *Salmon*, 250 Conn. 147, 167, 735 A.2d 333 (1999), in which this court clarified that only an actual *party* to the underlying action may file an appeal, the Appellate Court dismissed Thalheim's appeal.[8] Because Thalheim was not a party to the underlying action, the Appellate Court concluded that he had "no right of appellate review pursuant to [General Statutes] § 52-263."[9] *Leydon* v. *Greenwich*, supra, 57 Conn. App. 730–31. This writ of error by Thalheim followed. Because the parties to the underlying action again notified the court that they did not intend to participate in this proceeding, insofar as it did not affect their interests, we granted the attorney general's motion to intervene as the defendant in error (defendant).[10]

[8] The attorney general had filed a motion to dismiss Thalheim's appeal on the same ground, which was denied by the Appellate Court. The *Salmon* decision was released after the Appellate Court denied the motion to dismiss. In *State* v. *Salmon*, supra, 250 Conn. 147, we relied on our prior decision in *Bergeron* v. *Mackler*, 225 Conn. 391, 391–92 n.1, 623 A.2d 489 (1993), in which we noted that because the plaintiffs had not been parties to the underlying action, a writ of error was the proper vehicle for review of their claims.

[9] General Statutes § 52-263 provides: "Appeals from Superior Court. Exceptions. Upon the trial of all matters of fact in any cause or action in the Superior Court, whether to the court or jury, or before any judge thereof when the jurisdiction of any action or proceeding is vested in him, if either party is aggrieved by the decision of the court or judge upon any question or questions of law arising in the trial, including the denial of a motion to set aside a verdict, he may appeal to the court having jurisdiction from the final judgment of the court or of such judge, or from the decision of the court granting a motion to set aside a verdict, except in small claims cases, which shall not be appealable, and appeals as provided in sections 8-8 and 8-9."

[10] On December 1, 2000, the attorney general filed a motion to dismiss the writ of error on the grounds that (1) the writ was untimely, and (2) Thalheim had failed to join the trial judge as a proper and necessary party. Subsequently, we denied that motion.

Thalheim claims in his writ of error that the trial court improperly sanctioned him under § 51-84 for filing an amicus curiae brief in the underlying matter without first obtaining permission from the trial court or filing an appearance in the case. Specifically, Thalheim raises two constitutional issues. First, he contends that the rules of practice are void for vagueness, both on their face and as applied to him in this case, because they do not address the filing of amicus curiae briefs in the Superior Court. Second, he maintains that § 51-84 is unconstitutional on its face because it provides for the deprivation of property without providing for notice or a hearing. In addition, Thalheim argues that the trial court's order requiring him to show cause as to why he should not be sanctioned violated his procedural due process rights because that order did not specify which rules of practice he had violated.

Thalheim also makes several claims that challenge the trial court's authority to sanction him. Specifically, he claims that the trial court did not meet its burden of proof by clear and convincing evidence under § 51-84 that he had violated any of the rules of practice. He argues further that, because § 51-84 requires a violation of a specific rule before sanctions may be imposed and he did not violate any of the rules of practice, the trial court improperly sanctioned him under that statute. Finally, he contends that the trial court exceeded its authority under § 51-84 by imposing sanctions beyond those enumerated in the statute. We disagree with and therefore reject all of Thalheim's claims.

I

Thalheim first contends that the rules of practice are void for vagueness, both on their face and as applied. Specifically, he claims that Practice Book §§ 3-2 through 3-8, 5-1, 10-6, 11-1; see footnote 6 of this opinion; and

Practice Book § 67-7[11] are void for vagueness because a person of common intelligence "would not know that the filing of an amicus curiae brief at the Superior Court . . . by a nonparty [is] prohibited." He further argues that, because the submission of an amicus curiae brief implicates the first amendment right of free speech, he may levy a facial challenge to the rules of practice on vagueness grounds. We are not persuaded by either argument.

## A

It is well settled that "[i]n the absence of weighty countervailing circumstances, it is improvident for the court to invalidate a statute on its face." (Internal quotation marks omitted.) *Sweetman* v. *State Elections*

---

[11] Practice Book § 67-7 is a rule of appellate procedure, which provides: "The Amicus Curiae Brief

"A brief of an amicus curiae in cases before the court on the merits may be filed only with the permission of the court. An application for permission to appear as amicus curiae and to file a brief shall be filed within twenty days after the filing of the brief of the party, if any, whom the applicant intends to support, and if there is no such party then the application shall be filed no later than twenty days after the filing of the appellee's brief.

"The application shall state concisely the nature of the applicant's interest and the reasons why a brief of an amicus curiae should be allowed. The length of the brief shall not exceed ten pages unless a specific request is made for a brief of more than that length. The amicus application should specifically set forth reasons to justify the filing of a brief in excess of ten pages. A party served with an application may within ten days after the filing of the application file an objection concisely stating the reasons therefor.

"All briefs filed under this section shall comply with the applicable provisions of this chapter and shall set forth the interest of the amicus curiae.

"An amicus curiae may argue orally only when a specific request for such permission is granted by the court in which the appeal is pending.

"Except for habeas corpus matters based on criminal convictions, if an appeal in a noncriminal matter involves an attack on the constitutionality of a state statute, the attorney general may appear and file a brief amicus curiae as of right. Notice of the attorney general's intention to appear and file a brief shall be given to the appellate clerk and all parties no later than the date on which the brief of the party the attorney general supports is filed, and the attorney general's brief will be due twenty days after the filing of the brief of the party the attorney general supports."

*Enforcement Commission,* 249 Conn. 296, 320, 732 A.2d 144 (1999). "The general rule is that the constitutionality of a statutory provision being attacked as void for vagueness is determined by the statute's applicability to the particular facts at issue." *Packer* v. *Board of Education,* 246 Conn. 89, 105, 717 A.2d 117 (1998). "To do otherwise, absent the appearance that the statute in question intrudes upon fundamental guarantees, particularly first amendment freedoms, would be to put courts in the undesirable position of considering every conceivable situation which might possibly arise in the application of [the statute]." (Internal quotation marks omitted.) Id., 106; *State* v. *Ehlers,* 252 Conn. 579, 584, 750 A.2d 1079 (2000) (noting that "when an allegedly vague statute implicates the first amendment right of free speech, the statute's constitutionality is tested for vagueness on its face" [internal quotation marks omitted]). Thus, when no fundamental constitutional right is implicated; *Ramos* v. *Vernon,* 254 Conn. 799, 843, 761 A.2d 705 (2000); "in order to challenge successfully the facial validity of a statute, a party is required to demonstrate as a threshold matter that the statute may not be applied constitutionally to the facts of his case." *Packer* v. *Board of Education,* supra, 106; see also *State* v. *Wilchinski,* 242 Conn. 211, 218, 700 A.2d 1 (1997) (concluding that if statute may be applied constitutionally to facts of case, facial vagueness claim fails). These principles apply with equal force to the rules of practice. See *State* v. *Genotti,* 220 Conn. 796, 807, 601 A.2d 1013 (1992) (rules of statutory construction apply with equal force to rules of practice).

In this case, Thalheim claims that, because Practice Book §§ 3-2 through 3-8, 5-1, 10-6, 11-1 and 67-7 implicate his first amendment rights, he may challenge their constitutionality for vagueness on their face. His argument is premised on the notion that the rules of practice, as interpreted by the trial court, *prohibit* the filing of an

amicus curiae brief in the Superior Court by a nonparty, thereby infringing his first amendment "right 'to petition the government for redress of grievances.' " We, however, read the trial court's decision differently. The trial court concluded that the rules of practice do not permit the filing of an amicus curiae brief *without prior permission from the court*; it did not conclude that those rules *wholly prohibit* the filing of an amicus brief. Nor do we interpret the rules of practice to provide as such. Therefore, because the rules of practice do not *prohibit* the filing of an amicus brief in the Superior Court, we conclude that they do not implicate the first amendment to the United States constitution. Moreover, Thalheim has made no claim that the requirement calling for court permission prior to the filing of an amicus brief violates the right of free speech. Accordingly, because no fundamental right has been implicated, Thalheim's facial challenge must fail. See *Ramos* v. *Vernon*, supra, 254 Conn. 843.

### B

Thalheim also claims that Practice Book §§ 3-2 through 3-8, 5-1, 10-6, 11-1 and 67-7 are unconstitutionally vague as applied to the facts of this case. In analyzing this claim, "we proceed from the well recognized jurisprudential principle that [t]he party attacking a validly enacted statute . . . bears the heavy burden of proving its unconstitutionality beyond a reasonable doubt and we indulge in every presumption in favor of the statute's constitutionality." (Internal quotation marks omitted.) *State* v. *Payne*, 240 Conn. 766, 777, 695 A.2d 525 (1997). Again, this principle applies with equal force to the rules of practice. *State* v. *Genotti*, supra, 220 Conn. 807.

To demonstrate that §§ 3-2 through 3-8, 5-1, 10-6, 11-1 and 67-7 are unconstitutionally vague as applied to him, Thalheim must prove, beyond a reasonable doubt,

that the policies advanced by the void for vagueness doctrine were violated. Specifically, he must show that he had "inadequate notice of what was prohibited or that [he was] the [victim] of arbitrary and discriminatory enforcement." (Internal quotation marks omitted.) *Sweetman* v. *State Elections Enforcement Commission*, supra, 249 Conn. 322.

"Because perfect precision is neither possible nor required . . . the [vagueness] doctrine does not mandate the invalidation of all imprecisely drafted [rules]." (Internal quotation marks omitted.) Id. "If the meaning of a [rule] can be fairly ascertained a [rule] will not be void for vagueness since [m]any [rules] will have some inherent vagueness, for [i]n most English words and phrases there lurk uncertainties. . . . References to judicial opinions involving the [rule], the common law, legal dictionaries, or treatises may be necessary to ascertain a [rule's] meaning to determine if it gives fair warning." (Internal quotation marks omitted.) *State* v. *Payne*, supra, 240 Conn. 778.

Mindful of the intrinsic ambiguity of statutory language, the United States Supreme Court has stated that "[t]he degree of vagueness that the Constitution tolerates . . . depends in part on the nature of the enactment. . . . [P]erhaps the most important factor affecting the clarity that the Constitution demands of a law is whether it threatens to inhibit the exercise of constitutionally protected rights." *Hoffman Estates* v. *Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498–99, 102 S. Ct. 1186, 71 L. Ed. 2d 362 (1982).

The United States Supreme Court has also acknowledged "greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe." Id.; accord *State Management Assn. of Connecticut, Inc.* v. *O'Neill*, 204 Conn. 746, 757, 529 A.2d 1276 (1987) ("[c]ivil stat-

utes . . . may survive a vagueness challenge by a lesser degree of specificity than in criminal statutes" [internal quotation marks omitted]); *Sweetman* v. *State Elections Enforcement Commission,* supra, 249 Conn. 323 (same). In the present case, because the rules of practice at issue herein are civil rules that do not implicate any fundamental constitutional rights, we must indulge in every presumption in favor of upholding them.[12] *Sweetman* v. *State Elections Enforcement Commission,* supra, 324. In addition, because the rules of practice are designed for the guidance primarily of attorneys and judges—as well as pro se litigants who choose to enter the realm of litigation—the nature of that primary audience is significant in determining whether they are constitutionally vague. We note, moreover, in this regard that Thalheim is an attorney.

With these principles in mind, we turn to the facts and circumstances of Thalheim's void for vagueness claim. In so doing, our principal inquiry is whether Thalheim had sufficient notice and warning that he was required, under the rules of practice, to obtain court permission prior to filing an amicus curiae brief in the underlying matter.[13]

Thalheim contends that there is no rule of practice that *specifically* addresses whether and how an individual may file an amicus curiae brief in the *Superior Court.* On that basis, he maintains that, as applied to the filing of amicus curiae briefs in the Superior Court, Practice Book §§ 3-2 through 3-8 governing notice of appearance, § 5-1 regarding trial briefs, § 10-6 concerning pleadings, § 11-1 regarding the form of motions, and

[12] We reiterate that the rules of practice do not *prohibit* the filing of an amicus brief; as we indicate herein, they simply require court permission. See part I A of this opinion. Therefore, this case does not implicate the first amendment.

[13] Thalheim has made no claim that he was the victim of arbitrary and discriminatory enforcement.

§ 67-7 governing appellate amicus briefs, are void for vagueness because a person of common intelligence "would not know that the filing of an amicus curiae brief at the Superior Court . . . by a nonparty [is] prohibited." The defendant agrees with Thalheim that there is no Superior Court rule of practice that *specifically* addresses whether and how an individual may file an amicus curiae brief in the Superior Court.[14] The defendant maintains, however, that a cursory examination of legal encyclopedias, case law and existing rules of practice would have given Thalheim adequate notice that he was required to obtain court permission prior to filing an amicus brief. See, e.g., *State* v. *Patterson*, 236 Conn. 561, 566, 674 A.2d 416 (1996) (granting motion by criminal defense lawyers association to appear as amicus curiae and to file brief); *Goodridge* v. *Zoning Board of Appeals*, 58 Conn. App. 760, 764, 755 A.2d 329 (2000) (granting permission for Connecticut Bar Association to file amicus curiae brief); *Asjes* v. *Parish of Christ Church*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV960152470S (March 11, 1997) (20 Conn. L. Rptr. 461, 466) (granting permission for amicus curiae brief); *Village Condominium Assn.* v. *Loricco*, Superior Court, judicial district of New Haven, Housing Session, Docket No. CVNH95117219 (December 6, 1996) (state "sought and received amicus curiae status"); *Pip's, Inc.* v. *Westford Asset Management*, Superior Court, judicial district of New Haven, Housing Session, Docket No. CVNH96027368 (February 9, 1996) (16 Conn. L. Rptr. 400) (court allowed appearance of amicus curiae); *Field* v. *Kearns*, Superior Court,

[14] The defendant notes that some trial courts have concluded that they have no authority to grant a motion to appear as amicus curiae. See, e.g., *Bristol Resource Recovery Facility Operating Committee* v. *Bristol*, Superior Court, judicial district of Hartford-New Britain at New Britain, Docket No. 0453461 (June 30, 1995); *Sevetz* v. *Coe*, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 700275 (December 26, 1990) (3 Conn. L. Rptr. 93).

judicial district of Fairfield, Docket No. CV930301282S (April 6, 1995) (14 Conn. L. Rptr. 35) (court permitted amicus curiae to file memorandum of law supporting defendant's motion for summary judgment). We agree with the defendant.

The "[a]ppearance of an amicus curiae is generally authorized by the court's *grant of an application for the privilege* of appearing as amicus curiae and *not as of right*. Accordingly, the fact, extent and manner of an amicus curiae's participation is entirely *within the court's discretion* and an amicus curiae may ordinarily *be heard only by leave of the court*." (Emphasis added.) 4 Am. Jur. 2d, Amicus Curiae § 3 (1995). Indeed, when this court and the Appellate Court resolved to allow certain individuals the *right* to file an amicus brief without court permission, we enacted a specific court rule expressly stating so. See Practice Book § 67-7 (attorney general may file amicus curiae brief as of right when constitutionality of statute is in issue). In the absence of such a rule, however, it is well settled that participation by an amicus party in a pending case "rests within the *sound discretion of the court* . . . ." (Emphasis added.) 4 Am. Jur. 2d, supra, § 8; see also *Northern Securities Co.* v. *United States*, 191 U.S. 555, 555–56, 24 S. Ct. 119, 48 L. Ed. 299 (1903) ("[w]here in a pending case application to file briefs is made by counsel not employed therein . . . it is within our discretion to allow it in any case when justified by the circumstances"); *Eberl* v. *Scofield*, 244 Mont. 515, 520, 798 P.2d 536 (1990) ("The Montana Rules of Civil Procedure and the Uniform District Court Rules neither provide for nor prohibit the use of briefs by amicus curiae in the district courts. This [c]ourt has stated that [t]he right to be heard as amicus curiae is within the discretion of the court." [Internal quotation marks omitted.]); *In re Justice*, 59 Ohio App. 2d 78, 80, 392 N.E.2d 897 (1978) ("[g]enerally, the rule is that permitting the appearance

of an amicus curiae and the extent of his participation in the proceedings is a matter within the sound discretion of the trial court"); 4 Am. Jur. 2d, supra, § 3 ("[t]here are no prerequisites to the granting of amicus curiae status; but before granting such status, the court will determine if the [proffered] information is timely, useful or otherwise necessary to the administration of justice").

An examination of existing rules of practice also supports the conclusion that the rules, as a whole, do not permit the filing of an amicus curiae brief without court permission. Practice Book § 5-1 provides that "[t]he *parties may, as of right*, or shall, if the judicial authority so orders, file, at such time as the judicial authority shall determine, written trial briefs discussing the issues in the case and the factual or legal basis upon which they ought to be resolved." (Emphasis added.) By expressly providing the parties with the *right* to file written briefs, it is clear that the rules of practice do not provide such a right to nonparties, including potential amicus curiae. See *Gay & Lesbian Law Students Assn.* v. *Board of Trustees*, 236 Conn. 453, 476, 673 A.2d 484 (1996) (citing rule of statutory construction, expressio unius est exclusio alterius, or "the expression of one thing is the exclusion of another").[15]

---

[15] The trial court also cited several additional rules of practice that should have put Thalheim on notice that court permission was required prior to filing an amicus curiae brief in the Superior Court. For example, Practice Book § 3-7 (a) expressly provides that "[e]xcept by leave of the judicial authority, no attorney shall be permitted to appear in court or to be heard in behalf of a party until the attorney's appearance has been entered. . . ." The trial court's point in citing this particular rule was simply to show that, although Thalheim was not representing a particular party in the underlying action, he nevertheless was on notice that prior to filing *anything* in the Superior Court, he was required, at a minimum, to enter an appearance with the court.

The trial court also cited Practice Book § 10-6, which refers to pleadings that are allowed and the order in which they are to be filed. See footnote 6 of this opinion. The court's point in referring to this rule of practice was to show that it does not otherwise authorize the filing of an amicus brief without permission.

In addition, Practice Book § 67-7, governing appellate procedure, expressly provides that "[a] brief of amicus curiae in cases before the court on the merits may be filed *only with the permission of the court. . . .*" (Emphasis added.) Thalheim contends that because this rule is a rule of *appellate* procedure, he had inadequate notice that court permission was required prior to filing an amicus brief in the *Superior Court.* We disagree. This court previously has stated that "[a] statute is not unconstitutional merely because a person must inquire further as to the precise reach of its prohibitions, nor is it necessary that a statute list the exact conduct prohibited." *Packer* v. *Board of Education,* supra, 246 Conn. 101. That same principle applies in this case. Had Thalheim inquired further as to the exact reach of § 67-7, he would have learned that he was required to obtain permission from the trial court prior to filing an amicus brief in the underlying matter.

We conclude that Thalheim, upon being apprised of the language of Practice Book §§ 5-1, 3-7 (a) and 67-7, as well as the voluminous literature and prior case law involving amicus curiae participation in pending cases, was adequately warned and on notice that court permission is required prior to the filing of an amicus brief in the Superior Court. In addition, we note that Thalheim testified at the show cause hearing that he had been practicing law for more than fifteen years. Therefore, he is expected to have superior knowledge on general court procedure based on his status as an attorney and his ability to access literature on court procedure. Cf. *State* v. *DeFrancesco,* 235 Conn. 426, 446, 668 A.2d 348 (1995) (because defendant had "heightened knowl-

Finally, the trial court referred to Practice Book § 11-1, which prescribes the procedure for filing motions, requests, applications and objections. See footnote 6 of this opinion. In citing this rule of practice, the court noted that, at the very least, upon reading this rule, Thalheim should have been apprised that some sort of permission was needed prior to filing an amicus brief. We agree with the trial court's analysis.

edge" of bobcats she had adequate warning that possession of hybrid bobcat violated General Statutes § 26-40a). Indeed, as a member of the Connecticut bar, he is expected to *know* the rules of practice. The combination of these factors provided Thalheim with adequate notice that filing an amicus brief without court permission violates the rules of practice. Accordingly, on the facts of this case, the rules of practice are not unconstitutionally vague as applied to Thalheim's conduct in the filing of an amicus brief in the Superior Court.

## II

Thalheim next claims that § 51-84 is unconstitutional on its face under the due process clause of the fourteenth amendment to the United States constitution because it provides for the deprivation of property without notice or a hearing.[16] He also maintains that the trial court violated his fourteenth amendment due process rights by failing to specify, prior to the show cause hearing, which rules of practice he had violated in filing his amicus curiae brief in the underlying matter. We are not persuaded.

## A

"It is important, at the outset, to recognize that the challenge of any state statute on constitutional grounds imposes a difficult burden on the challenger." *Heslin* v. *Connecticut Law Clinic of Trantolo & Trantolo*, 190 Conn. 510, 522, 461 A.2d 938 (1983). As noted previously, "[w]e have consistently held that every statute is presumed to be constitutional and have required invalidity

---

[16] Section 1 of the fourteenth amendment to the United States constitution provides: "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

to be established beyond a reasonable doubt." Id.; *Eielson* v. *Parker*, 179 Conn. 552, 557, 427 A.2d 814 (1980); *State* v. *Olds*, 171 Conn. 395, 411, 370 A.2d 969 (1976); *Adams* v. *Rubinow*, 157 Conn. 150, 152–53, 251 A.2d 49 (1968). "In the absence of weighty countervailing circumstances, it is improvident for the court to invalidate a statute on its face. . . . In construing a statute, the court must search for an effective and constitutional construction that reasonably accords with the legislature's underlying intent." (Citations omitted; internal quotation marks omitted.) *Sassone* v. *Lepore*, 226 Conn. 773, 778, 629 A.2d 357 (1993).

A procedural due process challenge to the validity of § 51-84 cannot proceed in the abstract. "A claim that a statute fails, on its face, to comport with the constitutional requirements of procedural due process reflects a fundamental misunderstanding of the law of due process. Due process is inherently fact-bound because due process is flexible and calls for such procedural protections as the particular situation demands. . . . The constitutional requirement of procedural due process thus invokes a balancing process that cannot take place in a factual vacuum." (Citation omitted; internal quotation marks omitted.) Id., 779; *Williams* v. *Bartlett*, 189 Conn. 471, 476, 457 A.2d 290 (noting that due process "is not a technical conception with a fixed content unrelated to time, place and circumstances" [internal quotation marks omitted]), appeal dismissed, 464 U.S. 801, 104 S. Ct. 46, 78 L. Ed. 2d 67 (1983). Therefore, Thalheim's facial procedural due process challenge must fail.

B

Although Thalheim was afforded a hearing in this case, he nevertheless, makes a veiled "as applied" challenge to § 51-84. Specifically, he claims that the *trial court* violated his due process rights by ordering him

to appear and show cause as to why he should not be sanctioned for filing an amicus brief without following the rules of practice. He claims that, because the trial court's order did not specify which rules of practice he had violated, he did not have fair notice of the charges against him prior to the show cause hearing and, therefore, was deprived of a meaningful opportunity to be heard.[17] We disagree.

"At their core, the due process clauses of the state and federal constitutions require that one subject to a significant deprivation of liberty or property must be accorded adequate notice and a meaningful opportunity to be heard." (Internal quotation marks omitted.) *Council on Probate Judicial Conduct re: James H. Kinsella*, 193 Conn. 180, 207, 476 A.2d 1041 (1984); see *CFM of Connecticut, Inc.* v. *Chowdhury*, 239 Conn. 375, 393, 685 A.2d 1108 (1996) ("As a procedural matter, before imposing . . . sanctions, the court must afford the sanctioned party or attorney a proper hearing on the . . . motion for sanctions. . . . There must be fair notice and an opportunity for a hearing on the record." [Citation omitted; internal quotation marks omitted.]), overruled on other grounds, *State* v. *Salmon*, supra, 250 Conn. 154–55; see also *Statewide Grievance Committee* v. *Botwick*, 226 Conn. 299, 308, 627 A.2d 901 (1993) (before disciplined, attorney entitled to notice of charges, fair hearing and appeal to court for determination of whether he was deprived of due process). These requirements apply to the imposition of sanctions. See, e.g., *CFM of Connecticut, Inc.* v. *Chowdhury*, supra, 393; *In the Matter of Presnick*, 19 Conn. App. 340, 349–51, 563 A.2d 299, cert. denied, 213 Conn. 801, 567 A.2d 833 (1989).

In the context of attorney misconduct proceedings, this court previously has stated that notice must be

---

[17] Thalheim acknowledges that he in fact had a hearing before the imposition of any sanction.

"sufficiently intelligible and informing to advise the . . . attorney of the accusation or accusations made against him, to the end that . . . [he] may prepare to meet the charges against him . . . . If this condition is satisfied, so that the accused is fully and fairly apprised of the charge or charges made, the complaint is sufficient to give him an opportunity to be fully and fairly heard . . . ." *In re Peck*, 88 Conn. 447, 453, 91 A. 274 (1914). This court also has explained that "a hearing such as this is not the trial of a criminal or civil action or suit, but an investigation by the court into the conduct of one of its own officers, and that, therefore, while the complaint should be sufficiently informing to advise the . . . attorney of the charges made against him, it is not required that it be marked by the same precision of statement, or conformity to the recognized formalities or technicalities of pleadings, as are expected in complaints in civil or criminal actions." *Grievance Committee of the Bar of New Haven County* v. *Sinn*, 128 Conn. 419, 424–25, 23 A.2d 516 (1941).

In this case, the trial court issued an order to Thalheim to appear and "show cause why [he] should not be sanctioned under [§] 51-84 for filing an amicus curiae brief without following the [r]ules of [p]ractice." Thus, there is no question that the trial court's order adequately apprised Thalheim of the nature of the charges against him, namely, that he had violated the rules of practice in his attempt to file an amicus curiae brief in the underlying matter. Cf. *In re Peck*, supra, 88 Conn. 454 (concluding that notice requirement satisfied where "the charges of misconduct [were] there"; complaint need not contain "such distinct and precise specification and characterization of acts of misconduct as would be incorporated into a criminal indictment, or even a well-drafted civil complaint"). In addition, the record before this court reflects that Thalheim was given a full and fair opportunity at the show cause

hearing to respond to the charges against him. Therefore, we conclude that, because Thalheim received adequate notice and a meaningful opportunity to be heard, his due process claim must fail.

## III

Thalheim next contends that the trial court failed to meet its burden of proof under § 51-84, to establish by clear and convincing evidence that he had violated a specific rule of practice. He further claims that because § 51-84 requires a violation of a specific rule prior to the imposition of sanctions, the court improperly sanctioned him under that statute. Finally, he maintains the trial court exceeded its authority because the sanctions it imposed were beyond those enumerated in § 51-84. These claims have no merit.

## A

Thalheim's first contention regarding the trial court's failure to meet its burden of proof under § 51-84 requires little comment. Thalheim claims that because the trial court initiated an action against him, it took on the role of a plaintiff and, therefore, was required to *prove*, by clear and convincing evidence, that he had violated the rules of practice. Because the trial court did not prove that Thalheim had violated a specific rule of practice, Thalheim claims that it failed to meet its burden.

The phrase "burden of proof" has been defined as "the necessity or duty of affirmatively proving a *fact or facts in dispute* on an issue *raised between the parties* in a cause." (Emphasis added.) Black's Law Dictionary (4th Ed. 1968); see also J. Berman, Connecticut Evidence (1953) p. 64 (defining burden of proof as "burden which rests upon every *party* to a cause" of going forward with the evidence *if it is in dispute* [emphasis added]). "Clear and convincing evidence" refers to the quantum of *factual* proof required for

the court to find facts. *Council on Probate Judicial Conduct re: James H. Kinsella,* supra, 193 Conn. 190–91; *Statewide Grievance Committee* v. *Presnick,* 18 Conn. App. 316, 322, 559 A.2d 220 (1989). In this case, Thalheim has not challenged the factual basis of the trial court's decision as being clearly erroneous. Indeed, it is an undisputed fact that Thalheim filed an amicus brief without permission and without entering an appearance. See *Mohegan Tribe of Indians of Connecticut* v. *Mohegan Tribe & Nation, Inc.,* 255 Conn. 358, 379, 769 A.2d 34 (2001) ("[w]here the factual basis of the [trial] court's decision is challenged we must determine whether the facts set out . . . are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous" [internal quotation marks omitted]). Put another way, because it is undisputed, there *is* clear and convincing evidence that Thalheim filed an amicus curiae brief in the underlying matter without court permission and without entering an appearance. Accordingly, Thalheim's claim has no merit.[18]

---

[18] Thalheim also maintains that the trial court's order, requiring him to appear and show cause why he should not be sanctioned for violating the rules of practice, improperly placed the burden of proof upon him to show that he had not violated the rules. We disagree.

This court previously has stated that "an order to show cause has simply the effect of notice of a motion." *In the Matter of Gilhuly's Petition,* 124 Conn. 271, 282, 199 A. 436 (1938). In this case, the order to show cause put Thalheim on notice that the court believed he had no authority under the rules of practice to file an amicus curiae brief in the manner that he had done. Thalheim was given a hearing, at which he could have "shown cause" as to why he should not be sanctioned. That is, he could have shown that he in fact *had* the authority to file an amicus brief. Therefore, the trial court properly informed Thalheim at the hearing: "You're a member of the bar and [are] presumed to know the rules. The rules of law in trial practice are the Practice Book, so you're presumed to know those rules. So the burden is on you to tell me where I say to you that you improperly filed the amicus brief for you to say to me, 'Judge, I beg to differ with you. Here's the authority under which I've filed it . . . .' " Thus, the court did not place the burden on Thalheim to show that he had not violated the rules of practice. Rather, having provided Thalheim with notice that it believed he had violated the rules and had improperly filed an amicus brief, and having

## B

Thalheim next contends that sanctions may be imposed under § 51-84 *only* for the violation of a *specific rule*. On that basis, he claims that, because he did not violate any of the rules of practice, the imposition of sanctions against him was improper. We are not persuaded.

At the outset, we reiterate, as discussed in part I of this opinion, that, insofar as the Practice Book rules, specifically §§ 5-1 and 3-8, only authorize *parties* to file trial briefs and require attorneys to file appearances prior to addressing the court, Thalheim violated these rules by filing a brief without authorization and without entering an appearance. Accordingly, we reject Thalheim's claim that he did not violate any specific rule of practice.

Moreover, we conclude that the failure of the trial court to identify any *one* specific rule of practice did not undermine its authority to sanction Thalheim. "The trial court has the authority to regulate the conduct of attorneys and has a duty to enforce the standards of conduct regarding attorneys." *Bergeron* v. *Mackler*, 225 Conn. 391, 397, 623 A.2d 489 (1993). The court also has the "inherent power . . . to discipline members of the bar, and to provide for the imposition of reasonable sanctions to compel the observance of its rules"; (internal quotation marks omitted) *Gionfrido* v. *Wharf Realty, Inc.*, 193 Conn. 28, 33, 474 A.2d 787 (1984); "*even in the absence of a specific rule or order of the court that is claimed to have been violated.*" (Emphasis added.) *CFM of Connecticut, Inc.* v. *Chowdhury*, supra, 239 Conn. 393; cf. *Statewide Grievance Committee* v. *Botwick*, supra, 226 Conn. 299 (reference to specific

been unpersuaded by his response, the court concluded from its own observations and proper construction of the rules that Thalheim had violated the rules of practice.

rules does not constitute only basis for finding of guilt in attorney misconduct proceedings; reference to specific rule simply assists trial court in determining whether professional misconduct occurred). Section 51-84, "by its broader language, encompassing all judicial proceedings, recognizes the inherent power of courts to impose sanctions against attorneys." *In re Mongillo*, 190 Conn. 686, 692, 461 A.2d 1387 (1983), overruled on other grounds, *State* v. *Salmon*, supra, 250 Conn. 154. Accordingly, we conclude that the trial court reasonably concluded that Thalheim knew of his obligations under *several* Practice Book provisions and our case law and that he had disregarded those obligations.[19]

---

[19] To the extent that Thalheim claims that the trial court was required to make a finding of bad faith before sanctioning him, we disagree. "[A]ny . . . court may fine an attorney for *transgressing* its rules . . . ." (Emphasis added.) General Statutes § 51-84 (b). The plain language of the statute does not mandate a finding of bad faith prior to the imposition of sanctions. Moreover, this court has never interpreted § 51-84 to require bad faith. Cf. *Gionfrido* v. *Wharf Realty, Inc.*, supra, 193 Conn. 28 (trial court's dismissal of case for failure of plaintiff's counsel to timely appear and prosecute case was not abuse of discretion despite counsel's contention that traffic conditions contributed to his delay); *In re Application of Courtney*, 162 Conn. 518, 523, 294 A.2d 569 (1972) (noting in context of disbarment procedure that "the [trial] court is not restricted in this function to removal solely for misconduct. Any unfitness—whether moral, mental, educational or otherwise—will constitute just cause for denying one the power to act as an attorney.").

In addition, Thalheim's reliance on *Fattibene* v. *Kealey*, 18 Conn. App. 344, 359–60, 558 A.2d 677 (1989), and *CFM of Connecticut, Inc.* v. *Chowdhury*, supra, 239 Conn. 402, for the proposition that bad faith is an essential prerequisite to the imposition of sanctions is misplaced. At issue in both of those cases was the inherent authority of the trial court to award *attorney's fees to an opposing party*, not the authority of the court to impose sanctions against an attorney for violating a rule of practice or order of the court. Although an award of attorney's fees generally requires bad faith; *CFM of Connecticut, Inc.* v. *Chowdhury*, supra, 401; an order of sanctions against an attorney under § 51-84 mandates no such finding. Cf. *Statewide Grievance Committee* v. *Presnick*, supra, 18 Conn. App. 322 (concluding that "[w]hile the trial court may consider evidence of good motives and good faith in reaching its conclusions, neither of the disciplinary rules involved requires a finding of corrupt motive or bad faith"). Accordingly, we conclude that the trial court was not required to make a finding of bad faith prior to sanctioning Thalheim under § 51-84.

## C

Finally, Thalheim claims that the trial court exceeded its authority under § 51-84 by imposing sanctions beyond those enumerated in the statute. Specifically, he maintains that § 51-84 authorizes only two types of sanctions: a maximum of $100 fine, or suspension or displacement from the bar. Accordingly, he claims that the trial court exceeded its authority in ordering him to read the Practice Book and to listen to audiocassettes available from the Connecticut Bar Association pertaining to civil practice and procedure in Connecticut courts. Again, we disagree.

As noted previously, "it is an inherent power of the court to discipline members of the bar, and to provide for the imposition of reasonable sanctions to compel the observance of its rules." (Internal quotation marks omitted.) *Gionfrido* v. *Wharf Realty, Inc.*, supra, 193 Conn. 33. "A court disciplining an attorney does so not to punish the attorney, but rather to safeguard the administration of justice and to protect the public from the misconduct or unfitness of those who are members of the legal profession. *In re Durant*, 80 Conn. 140, 147, 67 A. 497 (1907)." *Statewide Grievance Committee* v. *Fountain*, 56 Conn. App. 375, 378, 743 A.2d 647 (2000); see also *In re Dodson*, 214 Conn. 344, 354, 572 A.2d 328, cert. denied, 498 U.S. 896, 111 S. Ct. 247, 112 L. Ed. 2d 205 (1990) ("[t]he trial judge . . . has the duty to deter and correct misconduct of attorneys with respect to their obligations as officers of the court to support the authority of the court and enable the trial to proceed with dignity").

With these principles in mind, we previously have determined that "[a]ppropriate sanctions include, but *are not limited to* fining the attorney in accordance with [§] 51-84 . . . ." (Emphasis added; internal quotation marks omitted.) *Gionfrido* v. *Wharf Realty, Inc.*,

supra, 193 Conn. 34. Indeed, "[a] court is free to determine in each case, as may seem best in light of the entire record before it, whether a sanction is appropriate and, if so, *what the sanction should be. Statewide Grievance Committee* v. *Shluger*, 230 Conn. 668, 678–79, 646 A.2d 781 (1994)." (Emphasis added.) *Statewide Grievance Committee* v. *Fountain*, supra, 56 Conn. App. 378; see also *In re Peck*, supra, 88 Conn. 457 ("[T]he power of the courts is left unfettered to act as situations, as they may arise, may seem to require, for efficient discipline of misconduct . . . . Such statutes as ours are not restrictive of the inherent powers which reside in courts to inquire into the conduct of their own officers, and to discipline them for misconduct.").

"As with any discretionary action of the trial court, appellate review requires every reasonable presumption in favor of the action, and the ultimate issue for us is whether the trial court could have reasonably concluded as it did." *Biro* v. *Hill*, 231 Conn. 462, 465, 650 A.2d 541 (1994); see also *Higgins* v. *Karp*, 239 Conn. 802, 808, 687 A.2d 539 (1997). Therefore, whether this court would have imposed a different sanction for the defendant is irrelevant. Cf. *Gionfrido* v. *Wharf Realty Inc.*, supra, 193 Conn. 34 (concluding that trial court did not abuse its discretion in choosing more powerful sanction of dismissing case rather than more moderate sanction directed at attorney himself). Rather, we must determine whether the trial court abused its discretion in concluding that the appropriate sanction was for Thalheim to read the Practice Book and listen to civil procedure tapes.

In this case, the trial court determined that Thalheim lacked a basic understanding of civil procedure and the rules of practice. Specifically, the trial court concluded that, in filing an amicus curiae brief without permission from the court, Thalheim had violated Practice Book §§ 3-2 through 3-8, 5-1, 10-6 and 11-1. In addition, the

trial court expressed its concern that an unsolicited amicus curiae brief could contain facts or arguments that prejudice the parties, or scandalous material about the parties or their attorneys that should not be before the court. See *Abington Ltd. Partnership* v. *Heublein*, 246 Conn. 815, 825–26, 717 A.2d 1232 (1998) (trial judge should have recused himself after visiting property that was subject of pending action and discussing case with person residing near property). Under the circumstances of this case, we conclude that the trial court reasonably could have found that a sanctions order was appropriate. We further conclude that the trial court did not abuse its discretion in requiring the defendant to read the Practice Book and to listen to civil procedure tapes.

The writ of error is dismissed.

In this opinion the other justices concurred.